**In re UNIT PARTS COMPANY, Debtor.**

**No. CIV-81-188-E.**

United States District Court,
W. D. Oklahoma.

Feb. 23, 1981.

John N. Hermes and Louis J. Price of McAfee, Taft, Mark, Bond, Rucks & Woodruff, P. C., Oklahoma City, Okl., for Bank of America.

## ORDER

EUBANKS, District Judge.

On the 19th day of February, 1981, the above styled cause came on for argument of counsel upon the National Labor Relations Board's (NLRB's) "Emergency Application for Stay Pending Appeal" pursuant to Bankruptcy Rule 805 (counterpart of Rule 8, Federal Rules of Appellate Procedure) seeking the stay of a February 17, 1981, order entered by the Bankruptcy Court in and for the Western District of Oklahoma in its Case No. 80–01101, wherein the Bankruptcy Judge although denying the trustee's request for contempt citation against United Food and Commercial Workers International Union AFL–CIO/CLC District Local No. 644 for violation of the automatic stay provisions of 11 U.S.C. § 362, and for injunctive relief against the Local Union and the NLRB, nonetheless ordered and proceeded to hear creditor NLRB's First Amended Proof of Claim ["believed in excess of $345,000.00" filed with the Bankruptcy Court December 15, 1980 (amending an earlier claim "believed in excess of $100,-000.00" filed October 9, 1980), objected to by the Trustee January 30, 1981] and "elected *not* to abstain from taking jurisdiction of" identical claims filed before the NLRB, August 29, 1980, for wages and grievances accruing on and after June 17, 1980, and after the June 6, 1980, involuntary filing of this chapter 11 case. The order for relief was entered July 7, 1980.

The applicant, National Labor Relations Board, appearing through its counsel, Sara M. Green and Kathleen Aure; Local No. 644 of the United Food . and Commercial Workers Union, AFL–CIO/CLC appearing through its counsel, John Preefer and Eugene Mathews; the Trustee, Murray Cohen, appearing in person and *pro se*; the. creditor, Borg-Warner Corporation and Borg-Warner Leasing Division of Borg-Warner

Aileen A. Armstrong, Asst. Gen. Counsel for Sp. Litigation, and Sara M. Green and Kathleen Aure, Co-counsel, N. L. R. B., Washington, D. C., for N. L. R. B.

John J. Preefer of Marcus & Angel, New York City, and Eugene H. Mathews of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl., for United Food and Commercial Workers Union, AFL–CIO/CLC, Local No. 644.

Murray Cohen, Trustee, pro se, Oklahoma City, Okl., Trustee in Bankruptcy in Case No. 80–01101, In Re: Unit Parts Company, Debtor, appearing in person and pro se.

G. Blaine Schwabe, III of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for Borg-Warner Leasing Division of Borg-Warner Acceptance Co.

**388**

Acceptance Company, appearing through its counsel, G. Blaine Schwabe, III; the creditor, Bank of America, appearing through its counsel, John Hermes and Louis Price. The Court heard extensive argument of counsel for all parties.

The applicant, NLRB, joined by District Local # 644, urges that Judge Berry has no jurisdiction, concurrent or otherwise, to determine the pending bankruptcy contingent claim of NLRB on behalf of the some 400 employees for backpay owing, for improperly discharging them, for refusing to rehire others previously terminated, to determine the amount of money, if any, such workers should receive, or the priority of any such sums, since the NLRB is vested with exclusive jurisdiction to make all such determinations involving unfair labor practices arising under the National Labor Relations Act and committed by the debtor during the pendency of this chapter 11 case, all of which will be considered in the proceeding filed with the NLRB. As authority, the applicant cites: *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *In Re Shippers Interstate Service, Inc.*, 618 F.2d 9 (7th Cir. 1980); and *Seeburg v. NLRB*, 5 B.R. 364, 105 LRRM 3355 (Bkrtcy., N.D.Ill.1980).

The Trustee and counsel for creditors urge that the new Bankruptcy Reform Act, section 241 (28 U.S.C. § 1471) vests the Bankruptcy Court with assertable concurrent jurisdiction over the instant contingent claims and that there is no appealable order properly before this appellate court which could authorize this Court's injunctive interference with the Bankruptcy Court's hearing in progress to determine, or estimate, such claims.

The precise question is whether or not this Court should enjoin The Honorable Robert L. Berry, United States Bankruptcy Judge for the Western District of Oklahoma, from continuing to hear the NLRB creditor claim which was objected to by the Trustee under code section 502(a).

The appealed from Bankruptcy Court order reads in part:

2. Under the jurisdictional provisions of 28 U.S.C. § 1471, this Court has determined that *all* matters relating to claims by employees and former employees of the debtor or filed on their behalf as well as claims by the United Food and Commercial Workers International Union AFL–CIO/CLC District Local No. 644 and the National Labor Relations Board, are matters "arising from or related to" these bankruptcy proceedings. This Court has therefore, under the aforementioned Statute, elected not to abstain from taking jurisdiction of these matters and will itself make all determinations of all issues regarding them including, but not limited to, validity of all claims, amounts due thereunder, liquidation of the claims and priorities of distribution. In making these determinations, this Court will not be bound by any decision, ruling or finding of any lower court or administrative board, body or tribunal. All parties are expected to govern themselves accordingly. Also, according to the aforementioned Statute, this Court understands that this decision not to abstain is not reviewable by appeal or otherwise [28 U.S.C. § 1471(d)].

Section 1471 of Title 28, United States Code, provides in part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) *Notwithstanding any Act* of Congress that *confers exclusive jurisdiction* on a court or courts other than the district courts, the *district courts shall* have *original* but not exclusive *jurisdiction* of *all civil proceedings arising under title 11 or arising in* or *related to* cases under title 11.

(c) *The bankruptcy court* for the district in which a case under title 11 is commenced *shall exercise all* of the *jurisdiction conferred* by this section *on the district courts.*

(d) Subsection (b) or (c) of this section *does not prevent* a district court or a bankruptcy court, *in the interest of jus-*

*tice, from abstaining from hearing* a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a *decision not to abstain, is not reviewable by appeal or otherwise.*

. . . (Emphasis added.)

■ *Cases* "under Title 11 are to be distinguished from *civil proceedings* arising under Title 11 or civil proceedings, related to or arising in those cases. The former is the subject of § 1471(a), while the latter are covered by § 1471(b)." 1 *Collier on Bankruptcy* 3–37.

The claims pending before the NLRB probably are not removable to the Bankruptcy Court under 28 U.S.C. § 1478 since the NLRB may be a governmental unit seeking to enforce its "regulatory power." But the issue here is the pervasive jurisdictional sweep of section 1471. By conscious design, Congress endowed the Bankruptcy Court with *wide* latitude to deal with all money problems touching the financially threatened. The "idea behind the 1978 legislation and § 1471 in particular, was that it is not fruitful and is in fact destructive to *categorize* jurisdiction. *The three terms* were used in § 1471(b) to include *all possible proceedings.* . . ." 1 *Collier* 3–43. (Emphasis added.) As stated in Reform Act Legislative History notes:

> Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising under or related to cases under Title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the Bankruptcy Code. Actions that formerly had to be tried in state court or in federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. . . . The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case." S.Rep.No. 989, 95th Cong. 1st Sess. 195–54, U.S.Code Cong. & Admin.News 1978, 5787 (1978).

■ Noteworthily, the "original jurisdiction . . . granted by § 1471(b) is vested '[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts.' For example, the Tucker Act confers exclusive jurisdiction of cases brought under that statute involving more than $10,000.00 on the court of claims. The thrust of the introductory language to § 1471(b), then, is that, unless the court chooses to abstain, civil proceedings which would otherwise be heard in the court of claims will instead be heard in the bankruptcy court. *This provision is in accordance with the intent of Congress to bring all litigation within the umbrella of the bankruptcy court, irrespective of Congressional statements to the contrary in the context of certain specialized litigation.*" 1 *Collier* 3–39–40. (Emphasis added.) Now, bankruptcy jurisdictional breadth includes *habeas corpus*, and all other writs, plus *all* powers of courts of equity, law or admiralty (see 1 *Collier* 3–36) and in contrast to the former Act applies with equal force to *all* Title 11 proceedings whether rehabilitation or liquidation. 1 *Collier* 3–9.

■ In addition to the civil proceedings mentioned above, other jurisdictional illustrations "include controversies regarding whether to appoint a trustee under chapter 11, an application to issue certificates of indebtedness with priority over existing liens, an application for approval of a plan under chapters 9, 11 or 13, complaints objecting to the discharge of a debtor, and *objections to claims*. All of these categories of potential disputes arise under Title 11." 1 *Collier* 3–41. (Emphasis added.)

NLRB counsel acknowledge in their brief that:

> [I]f one looks at the proof of claim filed by the NLRB in the bankruptcy proceeding, attached to that claim is the complaint filed in the NLRB proceeding. While the claim stated for purposes of estimation that $345,000.00 was due, *the claim is clearly a contingent claim which must be further liquidated* in accordance

with the complaint filed before the NLRB. (Emphasis added.)

Significantly, Bankruptcy Code section 502(c) provides:

There shall be estimated (by the bankruptcy court) for purpose of allowance under this section—

(1) any contingent or liquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case; . . .

In the face of the Trustee objection, the Bankruptcy Judge must conduct a hearing to make the required *claim estimate* since such "subsection requires that all claims against the debtor be converted into dollar amounts." S.Rep. 95–989, 95th Cong. 2d Sess., p. 354, U.S.Code Cong. & Admin. News, 6310. "Unlike the treatment afforded contingent or unliquidated claims under the 1898 Bankruptcy Act . . . § 502(c) of the 1978 legislation provides for an estimate of the amount of a contingent or unliquidated claim for purpose of its allowance, where the actual liquidation of the claim or its actual amount as determined by the court, would unduly delay the closing of the case." 1 *Collier* 502–62.

The problem is simply whether or not the Bankruptcy Court deems claim liquidation or estimation reasonably feasible. The parties in interest may advance all the reasons available, but resolution thereof is one of judicial discretion exercised in light of all case circumstances, including "particularly the probable duration of the liquidation process as compared with the period of future uncertainty due to the contingency in question. . . . With such consideration of expeditious administration looming large in every insolvency case, it follows that some middle ground must be chosen between accepting a claim, the amount of which may still be uncertain either as to existence or amount, and the total disallowance of the claim." 3 *Collier* 502–64. As further observed:

As the *manner* and *procedure* to be followed in connection with the *seemingly mandatory requirement* of *estimation* would appear to be largely procedural it

is expected that the Bankruptcy Rules will deal with the matter to the extent that special rule is required insofar as the potentiality of a jury trial, the potentiality of arbitration proceedings for purposes of estimation, the potentiality of having another forum continue the process of liquidation if suit had been pending there, may have to be accommodated. To the extent, *however,* that these might provide alternative modes for the estimation required by section 502(c), *there would appear to be no reason why the bankruptcy court with its undoubted jurisdiction to determine the allowability of claims could not, under section 502(b), entertain an objection and determine the amount of the claim and allow it in such amount as is ultimately estimated.* 3 *Collier* 502–65, 66. (Emphasis added.)

■ The Bankruptcy Judge's "undoubted" authority to make claim estimations, when exercised as a vital part of focusing on possible rehabilitation, is hand-maiden to the discretionary "interest of justice" abstention decision of 28 U.S.C. § 1471(d). The Bankruptcy Court order electing *not to abstain* from exercising jurisdiction over the instant claims provides in part:

"This Court . . . will itself make all determinations of all issues regarding them (the claims) including, but not limited to, validity of all claims, amounts due thereunder, liquidation of claims and priorities of distribution."

The last sentence of section 1471(d) could not express more pointedly that the Bankruptcy Court's decision, either to abstain or not to abstain is "not reviewable by appeal or otherwise." As underscored in *Collier*:

Under the (former) Act, such decisions, although interlocutory, probably were the proper subject of an appeal. This rule . . . is reversed absolutely, by this sentence. It is in the interests of all concerned to get to the merits of a proceeding as promptly as possible. Nor did Congress wish to bring in existing litigation over summary-plenary jurisdiction through the guise of abstention motions under § 1471(d). *To this end, the decision*

*of a bankruptcy court regarding absten-tion is final when entered and cannot be attacked either at the time it is made or later. Nor may the decision be collateral-ly attacked, as by mandamus or other procedure....*" 1 *Collier* 3–54. (Emphasis added.)

The cases urged by the applicant are not persuasive. *Nathanson*, supra, decided under the former Act did not involve the pervasive jurisdictional grant. Even so, Justice Douglas revealingly observed (344 U.S. at page 30, 73 S.Ct. at page 83):

[T]he bankruptcy court normally supervises the liquidation of claims.... But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation.... And where the matter in controversy has been entrusted by Congress to an administrative agency, *the bankruptcy court normally should stay its hand pending an administrative decision.* (Citations omitted.) (Emphasis added.)

In *Shippers*, supra, at page 10, Seventh Circuit Judge Sprecher remarked:

*At issue is whether the filing* of a Chapter XI bankruptcy petition under the 1898 Act *operates as an automatic stay* of the National Labor Relations Board Unfair Labor Practice Proceedings *when the assets of the bankrupt estate are not threatened* and the bankrupt estate is being reorganized and not liquidated ..." (Emphasis added.)

Interestingly, Judge Sprecher went on to remark (at page 13) that if the regulatory proceedings threaten estate assets the bankruptcy court has discretionary authority to issue a stay. In *Seeburg*, supra, decided under the new Bankruptcy Code, the District Judge reversed the Bankruptcy Judge and vacated the Bankruptcy Judge's order enjoining the NLRB's unfair labor practice proceeding, but noted:

"Regardless of the priority that the Unfair Labor Practice claims may have, the transcript of the July 25 hearing plainly reveals that the company, its purchaser, and the bankruptcy judge have

already approved a reorganization plan which includes a provision setting aside the full potential back pay claim. Accordingly, the court finds it difficult to understand the sense in which a board finding of back pay liability will materially threaten the estate's assets. (At page 3357.)

In the instant case, the Bankruptcy Judge did not enjoin the NLRB. Moreover, the debtor, Unit Parts Company is not postured comparable to Seeburg. The Unit Parts trustee is making effort to fashion and propose a plan, and, of course, there has been no setting aside of a "full potential back pay" claims fund.

█ Many instances may arise wherein the Bankruptcy Courts will do well to abstain from pre-empting claim determinations by administrative bodies possessing special expertise where such neither delays, complicates nor clouds rehabilitation prospects, but the Congress has planted such discretion exclusively at the *trial level* with the Bankruptcy Judge. [Parenthetically, the record reflects that considerable *Bankruptcy Code expertise* is going to be called upon to deal with these contested claims. A portion of the asserted NLRB claim falls between the involuntary filing date and that of the order for relief so as potentially to qualify portions thereof as class two administrative expenses. Read section 507(a)(2). Also, under Code section 1129 the Bankruptcy Court cannot confirm a plan unless administrative expenses are paid. Moreover, see Code section 502(b)(8) dealing with claims under terminated employment contracts.] And the Bankruptcy Court's decision not to abstain as to the claims proceeding before the NLRB is not reviewable by this or any court. 28 U.S.C. § 1471(d). Compare *In Re Northern Pipe Line Construction Co.*, 6 B.R. 928, 6 B.C.D. 1277 (Bkrtcy.Minn.1980), where pressing financial condition of debtor justified Bankruptcy Court pre-emption of pending Kentucky United States District Court case initiated by the debtor prior to its Title 11 filing.

Moreover, as an appellate tribunal [see 28 U.S.C. §§ 1334, 1471(c); 1 *Collier* 3–37] with no appealable order before it, this Court has no jurisdiction to interfere with bankruptcy case administration, the touchstone of which necessarily includes *power* to estimate all unliquidated claims, to determine priority of distribution (Code § 507), to determine claim allowability (see Code §§ 502–510), to classify claims (Code § 1122) and to take all other permissible steps directed toward rehabilitation.

Accordingly,

IT IS HEREBY ORDERED that the National Labor Relations Board's "Emergency Application for Stay Pending Appeal" be DENIED.