In re CONTINENTAL AIRLINES CORP., Continental Air Lines, Inc., Texas International Airlines, Inc., TXIA Holdings Corp., Debtors.

Bankruptcy Nos. 83–04019–H2–5, 83–04020–H1–5, 83–04021–H3–5 and 83–04022–H3–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 12, 1986.

John J. Gallagher, David P. Callet, Charles L. Warren, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for Continental Air Lines, Inc., et al.

Claude D. Montgomery, Robin S. Weinstein, Booth, Marcus & Pierce, New York City, for Official Union Labor and Pension Creditors' Committee.

Myron M. Sheinfeld, Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., Harvey Miller, Bruce Zirinsky, Weil, Gotshal & Manges, New York City, for Continental Air Lines, Inc. and Texas Intern. Airlines, Inc.

Michael E. Abram, Babette Ceccotti, Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n.

Jay E. Roth, Taylor, Roth & Hunt, Los Angeles, Cal., for Union of Flight Attendants.

Clifford H. Brown, Ervin, Cohen & Jessup, Beverly Hills, Cal., for Non-Union Labor & Pension Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO CLAIMS FOR ACCRUED SICK LEAVE

T. GLOVER ROBERTS, Bankruptcy Judge.

### FINDINGS OF UNCONTESTED FACT

1. On September 24, 1983, Continental Air Lines, Inc. and Texas International Airlines, Inc. filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq. Upon filing the bankruptcy petition, Continental temporarily suspended all domestic service and on September 27, 1983, Continental began rebuilding the service by reinstating a limited portion of its domestic service, initially requiring fewer employees than immediately prior to bankruptcy.

2. The Debtors implemented new employment policies for each employee group which included changes in the way sick leave would be accumulated and paid. Generally, the new policies reduced the maximum amount of sick leave that could be accrued, and, in some cases, changed the rate at which sick leave would accrue each month. Employees in any group whose accrued hours exceeded the maximum had their accrued hours reduced to the new maximum, not to zero.

3. The Air Line Pilots Association ("ALPA"), the Union of Flight Attendants ("UFA"), the International Association of Machinists ("IAM"), and numerous union and non-union individuals have filed proofs of claims in this Court for millions of dollars in accrued sick leave pay. ALPA's sick leave pay claim was withdrawn and treated as settled and dismissed with prejudice pursuant to this Court's Order Relative To Claims, Controversies and Related

Litigation dated October 31, 1985. UFA included its sick leave claim in its proof of claim for pre-petition wages and benefits filed on behalf of 2,665 flight attendants. These 2,665 flight attendants comprised all flight attendants on the pre-petition seniority list, including those subsequently terminated.

4. Debtors have sought summary judgment disallowing all accrued sick leave claims by or on behalf of terminated Continental employees on the grounds that neither the collective bargaining agreements between Debtors and UFA and IAM, nor the sick leave provisions of the pre-petition Corporate Policy Manual that applied to non-union employees and employees represented by the Transport Workers Union of America ("TWU") created a right to payment for accrued but unused sick leave. Debtors have also sought, pursuant to 11 U.S.C. § 502(c), to have the accrued sick leave claims of terminated employees estimated to have zero value.

5. Debtors have requested that their motion, insofar as it applies to working Continental employees and to individuals who may return to work in the future, be held in abeyance. However, Debtors continue to press their motion with respect to individuals whose employment with Continental has been terminated. More specifically, Debtors have directed their motion at all employees who have been discharged, or who have resigned or retired from employment with Continental.

6. Neither the sick leave provisions of the collective bargaining agreements between Debtors and UFA or IAM, nor those of the pre-petition Corporate Policy Manual that applied to non-union employees and to employees represented by the TWU, created a right to payment for accrued but unused sick leave under any circumstances. No provision in either the collective bargaining agreements or the Corporate Policy Manual provide for payment for unused sick leave upon request or upon termination, resignation, retirement, furlough or other change of employment status. Rather, the collective bargaining agreements and the Corporate Policy Manual make clear that sick leave pay is a substitute for wages and is available only when an actual illness or injury causes an employee to be absent from work.

7. No employee of Continental subject to this motion has ever received a cash payment for the value of accrued but unused sick leave. It has never been the past practice of Continental to grant any cash payment for accrued but unused sick leave to any individual employee or to any member of an employee group with a currently pending sick leave claim.

8. Neither UFA, IAM, or TWU has ever filed a grievance or otherwise challenged Continental's practice of not making cash payments for accrued but unused sick leave to employees upon request or upon termination, resignation, retirement, furlough or other change of employment status. Although individual Continental employees have occasionally filed grievances challenging Continental's practice of not making such payments, such grievances have always been resolved with the union acknowledging that no such obligation exists.

9. UFA, IAM, TWU, the Official Union Labor and Pension Creditors Committee, the Non-Union Labor and Pension Creditors Committee, and various individual claimants have opposed Debtors' motion upon the ground, generally, that the reduction of the maximum amount of sick leave that can be accrued diminished the value of that benefit to pre-petition employees who, at some point in their employment, might otherwise have been entitled to more sick leave than the new maximums would allow. However, since Debtors have requested that their motion be held in abeyance with respect to all working Continental employees and with respect to all individuals who may, in the future, return to work for Continental, these issues raised by these opposition arguments are, for the present, moot. TWU also challenges this Court's jurisdiction to decide the allowability of sick leave claims. In addition, a group of non-union employee creditors filed a Cross-

Motion For Partial Summary Judgment And Estimation Of Value Of Strike Leave Claims.

## CONCLUSIONS OF LAW

1. TWU challenges the jurisdiction of this Court through its contention that any dispute concerning the status of accrued sick leave is required by the RLA to be submitted to a system board of adjustment. This contention is meritless because the bankruptcy courts have jurisdiction to decide all claims against an estate. 28 U.S.C. §§ 1334(a); 157(a), (b)(1), (b)(2)(B).

2. Bankruptcy courts also have discretion to resolve claims even if there exists another tribunal for such resolution. *Zimmerman v. Continental Air Lines,* 712 F.2d 55, 56 (3d Cir.1983), *cert. denied,* 464 U.S. 1068, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). TWU relies upon *Matter of Gary Aircraft Corporation,* 698 F.2d 775 (5th Cir.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983), asserting that Congress has committed authority to disallow claims of this type to a specialized tribunal, the system board of adjustment. However, *Gary* does not hold that bankruptcy courts have no jurisdiction over claims for which there exists another tribunal. *Gary* was decided on the basis of findings that deferral of a government contract claim to the Armed Services Board of Contract Appeal would not impair the satisfaction of other bankruptcy claims and that government contracts are extremely complex, technical and esoteric.

3. This issue involves bankruptcy claims administration. Submission of the sick leave claims at issue here to arbitration, through a system board of adjustment, could seriously impair the claims and interests of other creditors because resolution of such claims will directly affect the amount of funds available to other creditors. Further, there is nothing complex, technical or esoteric about the issue of whether the collective bargaining agreements or the Corporate Policy Manual provide for the payment of sick leave pay to employees in circumstances other than ac-

tual illness. Moreover, system boards of adjustment are not specialized tribunals, and there exists no special reason to defer to an arbitrator who would not necessarily be any more familiar with the particular contract language or past practice of the parties than would this Court. In these circumstances, deferral to arbitration is not required. *See In re Amalgamated Foods, Inc.,* 41 B.R. 616 (Bankr.C.D.Cal.1984). Finally, unlike the situation in *Gary,* Continental does not have related claims against TWU which might require relitigation of the same issues in another forum. Consequently, the challenge to this Court's jurisdiction to determine the allowability of accrued sick leave claims is rejected.

4. Even if this Court did not have jurisdiction to liquidate the accrued sick leave claims, it nevertheless has jurisdiction to estimate the value of sick leave claims. In deed, 11 U.S.C. § 502(c) requires the bankruptcy court to estimate the value of unliquidated claims where liquidation would unduly delay reorganization. Liquidation of these sick leave claims through arbitration would unduly delay Debtors' reorganization. Furthermore, it has been held that courts may estimate the value of claims asserted on behalf of employees by the National Labor Relations Board ("NLRB"), without deferring to any NLRB administrative process which might otherwise apply. *See In re Unit Parts Co.,* 9 B.R. 386 (W.D.Okl.1981).

5. UFA has, through its memorandum in opposition to Debtors' motion, abandoned any claim for accrued sick leave pay which it may have asserted on behalf of flight attendants whose employment with Debtors has terminated. In any event, the undisputed meaning of the language of the UFA collective bargaining agreements, together with the undisputed past practice between the parties demonstrating that accrued sick leave pay has never been paid to terminated flight attendants, clearly indicates that terminated flight attendants are not entitled to accrued sick leave pay.

6. The IAM's memorandum in opposition to Debtors' motion appears to be consistent with Debtors' position that the IAM contracts do not provide for payment of sick leave except for actual illness, and that sick leave pay is not payable upon termination, retirement, resignation or furlough. Thus, the IAM's opposition established no issues of law or fact that would prevent disallowance of all claims for accrued but unused sick leave by terminated IAM-represented employees and, to the extent that the IAM itself has submitted a sick pay claim, on behalf of terminated IAM-represented employees.

7. No evidence has been proffered or argued to exist by or on behalf of TWU-represented employees to contradict Debtors' position that sick leave pay has been available to TWU-represented employees only for absences due to illness, and has not been paid to employees upon furlough, retirement, resignation or termination. Thus, terminated TWU-represented employees are not entitled to accrued sick leave pay.

8. In its opposition on behalf of non-contract employees, the Non-Union Labor Committee argues that the Corporate Policy Manual is an enforceable contract. This Court need not reach that issue, however, because the Manual expressly states that payment for unused sick leave is not due upon termination of employment. Moreover, in the past, non-contract employees have not been paid for accrued but unused sick leave upon termination. Indeed, the Non-Union Labor Committee agrees with both of those points.

9. Nevertheless, a group of non-union employee creditors argue that terminated employees are entitled to a payout for the value of accrued sick leave because they were not terminated, furloughed, or recalled in accordance with the provisions of the Corporate Policy Manual. Even assuming that such employees were improperly terminated under the Manual, and further assuming that such events gave rise to a cause of action, the terminated non-union employees would still not be entitled to sick leave pay because such a payout would not be a proper measure of damages. Their remedy would be a claim for loss of income occasioned by the improper termination or furlough. A payout of unused sick leave would not compensate them for any actual loss attributable to any failure to comply with the Manual's procedures, but would give them a benefit not otherwise forthcoming. Thus, even if non-union employees were improperly terminated or furloughed, or not properly recalled under the provisions of the Manual, they are still not entitled to pay for accrued, unused sick leave as liquidated damages. For these reasons, the Non-Union Employee Creditors' Cross-Motion For Partial Summary Judgment And Estimation Of Value Of Sick Leave Claims is without merit.

10. No affidavits or other admissible evidence have been offered to establish that there is a genuine dispute as to any material fact relating to any pending sick leave claim subject to Debtors' motion. Because this Court is persuaded that Debtors are entitled to judgment as a matter of law, summary judgment is appropriate and will be granted with respect to sick leave pay claims by or on behalf of all terminated Continental employees. *See* Fed.R.Civ.P. 56(e). Debtors' request that their motion be held in abeyance, insofar as it applies to employees who are presently working or will in the future return to work, is granted. The Non-Union Employee Creditors' Cross-Motion For Partial Summary Judgment And Estimation Of Value Of Sick Leave Claims is denied.

11. For the foregoing reasons, the union and individual claims for accrued, but unused, sick leave pay due to terminated Continental employees will be disallowed.

These Findings Of Fact and Conclusions of Law are hereby incorporated in and made a part of the Order attached hereto.