**In re MOUNTAIN VIEW COACH LINE, INC., Northstar Lines, Inc. d/b/a Shortway Northstar, and Holland Industries, Inc., Debtors.**

**Bankruptcy Nos. 87B 11543 (HCB), 87B 11966 (HCB) and 87B 12109 (HCB).**

United States Bankruptcy Court, S.D. New York.

April 19, 1989.

Rivkin, Radler, Dunne & Bayh, by Martin F. Brecker, New York City, for debtors.

N.L.R.B., Office of the Gen. Counsel, Washington, D.C. by Eric G. Moskowitz, Karen P. Fernbach, Corinna L. Metcalf, for N.L.R.B.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Holland Industries, Inc., the Debtor herein, has objected to the claim of the National Labor Relations Board ("NLRB" or the "Board") and seeks the entry of an Order pursuant to 11 U.S.C. § 502(c)(1) liquidating such claim, or, in the alternative, the disallowance of such claim under Bankruptcy Rule 3007. We hold that the doctrine of primary jurisdiction requires that the NLRB be given a reasonable period of time to liquidate the disputed claim.

I

The Debtor, Holland Industries, Inc., ("Holland"), is a bus company. In 1982, it formed a new corporate entity, Shortway Suburban Lines, Inc. ("Shortway") to purchase a commuter bus line service, Suburban Lines, Inc. ("Suburban"). The changes in management and the impact on labor resulting from that transaction triggered the claim of the NLRB at issue here. That claim is based on a 1987 NLRB Decision and Order where the NLRB found that Holland, Shortway and another affiliate, Shortway Airport Limousines, Inc. ("Airport") had committed unfair labor practices under the National Labor Relations Act, § 8, as amended, 29 U.S.C.A. § 158 (1988) (the "Act") and imposed the remedies, *inter alia*, of reinstatement and reimbursement of back pay for some thirty-one former Suburban employees. *Shortway Suburban Lines, Inc. et al.*, 286 NLRB No. 30, September 30, 1987, *order enforced*, 862 F.2d 309 (3rd Cir.1988).

The pertinent facts, set forth in the Board's decision, are as follows: Suburban had operated a commuter bus line in Pennsylvania since 1962. In 1969, the NLRB certified Local 1543 Transit Union, AFL–CIO ("Local 1543" or the "Union") to represent a unit of Suburban's drivers and mechanics, and since that time, Suburban and the Union had been parties to a series of collective bargaining agreements, the last of which was to expire on December 31, 1982.

In September of 1982, Suburban notified the Union and its employees that Holland had created a new subsidiary, Shortway Suburban Lines, Inc. ("Shortway") to purchase and assume the Suburban operations. Prior to the signing of the sales agreement between Suburban and Shortway on September 14, 1982, Shortway was aware of the collective bargaining agreement between Suburban and Local 1543 and apparently decided not to hire the Suburban employees because of their union affiliation. Shortway took over the Suburban operation on October 30, 1982 without hiring any of the Suburban employees and then entered into a new collective bargaining

agreement with Local 614 of the Teamsters Union, as representative of the new employees hired "off the street." None of those newly hired employees were former Suburban employees. Although Shortway experienced a high turnover rate and rehired some of the Suburban employees, as of the date of the NLRB hearing only five of the original thirty-one Suburban employees remained.

The Regional Director for the NLRB's Sixth Region issued an amended unfair labor practice complaint in March 1983. That complaint was dismissed in its entirety by an administrative law judge in December 1983. *Suburban Lines, Inc. et al.,* Case 6–CA–15916–17 (JD–492–83, Pittsburgh, PA). On appeal, the NLRB reversed the decision of the administrative judge and issued its Decision and Order in September 1987. 286 NLRB No. 30. The NLRB ruled that Holland and its subsidiaries were the successor employer to Suburban Lines, Inc. *Id.* at 19. The NLRB further found that Holland had violated §§ 8(a)(1), (2), (3) and (5) of the Act by failing to recognize and bargain with the Union since October 30, 1982 as the exclusive collective bargaining representative of the Suburban employees, including departing from preexisting rates of pay and benefits without prior notification and consultation with the Union, and by refusing to hire the employees of Suburban following the purchase of that company because of their union affiliation in order to avoid an obligation to bargain with the Union, and by recognizing and executing a collective-bargaining agreement with the Teamsters. *Id.* at 19–20.

To remedy these violations, the NLRB ordered, *inter alia,* that the former employees of Suburban be reinstated to their former positions, or, if those jobs no longer existed, to substantially equivalent positions and that they be made whole for any loss of earnings they may have suffered due to the discrimination practiced against them with interest computed thereon. *Id.* at 20. The Board's decision was affirmed by the Court of Appeals for the Third Circuit on October 24, 1988. *NLRB v. Short-way Suburban Lines, Inc.,* 862 F.2d 309, 129 LRRM 3144 (3rd Cir.1988).

After the Board's decision but prior to enforcement of its order by the Third Circuit, Holland Industries filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. § 1101 *et seq.* (1986) (the "Bankruptcy Code" or the "Code") on November 2, 1987. It has continued in business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code. 11 U.S.C. §§ 1107, 1108. Shortly thereafter, on November 12, 1987, Shortway filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* and a trustee was appointed.

The Board filed its Proof of Multiple Claims for Wages, Salary or Commissions with this Court against Holland and Shortway (the "Claim") on January 13, 1988. In each case, it asserts a priority claim in the amount of $3,395,700 plus interest for back pay, medical expenses and pension benefits due the approximately thirty-one former Suburban employees.

Holland filed its Objection to the NLRB Claim (the "Objection") on January 29, 1989 and moved that it be expunged. The bases of Holland's objection to the NLRB's proof of claim are threefold: (a) the claim fails to take into account that most, if not all, of the employees were employable and is, therefore, excessive and beyond the scope of the Board's order which required only that employees be "made whole for any loss of earnings that they may have suffered;" (b) the claim fails to account for the severe constriction of Suburban's business activities following the acquisition by Holland and the termination of its business; and (c) the Board's claim is not entitled to a priority under § 507(a)(3) and (4) of the Code, 11 U.S.C. § 507(a)(3), (4), since no individuals earned income from services performed within 90 days before the filing of the bankruptcy petition. Debtor's Reply Memorandum 4.

Holland has filed a plan of reorganization and a disclosure statement. A hearing on whether to approve the disclosure statement under 11 U.S.C. § 1125 was held on March 27, 1989 and adjourned to April 6,

1989. Support for the plan by Holland's largest creditor, Empire Bank of America, is conditioned upon confirmation by early June 1989. Debtor's Reply Memorandum 5.

Holland asserts that liquidation of the Claim by the NLRB will delay liquidation in time for confirmation of the plan. *Id.* It further argues that liquidation before this Court pursuant to § 502(c)(1) of the Code will be less expensive and less time consuming than a liquidation proceeding before the Board. *Id.* Finally, the Debtor maintains that confirmation of the plan will be thwarted if it is forced to deposit the cash necessary to pay the distribution which the Board's present claim would receive under the plan. It argues that since the plan requires payment of 20% in cash to general unsecured creditors and 100% in cash to priority wage creditors it would, therefore, be required to deposit cash in excess of $3.3 million for the Board's claim, cash which is simply not available. *Id.* Hence, Holland argues that, unless the Bankruptcy Court liquidates the NLRB's claim, its plan of reorganization will fail.

In response, the NLRB argues that the Board retains exclusive jurisdiction to determine remedies for unfair labor practices, including the amount of back pay or other monetary relief deemed appropriate by the Board. Response of the NLRB to Debtor's Objection to Proof of Claim 8 ("NLRB's Response"). Furthermore, since the Court of Appeals for the Third Circuit has entered a judgment against the Debtors, thereby removing any contingency from the Board's claim, it is up to the Debtors to come before the Board with proof of the date they closed Shortway and supply any evidence of mitigating circumstances relating to the amount of back pay or availability of employment since the purchase of Suburban by Shortway. *Id.* at 9. Once the Debtors have made their books and records available, the Board's Regional Office will issue a detailed back pay specification. *Id.* If a dispute arises as to the correct amount after the specification has been issued, the Board sets forth that the proper procedure would be first, a preliminary hearing before an administrative law judge, followed by a review by the Board with the possibility of ultimate determination by an appellate court. *Id.* The Board, therefore, believes that this Court is not the appropriate forum for determining the amount due to the thirty-one employees or the limit of their reinstatement rights. *Id.*

In addition, the Board asserts that it is entitled to priority status under Section 507 of the Code. 11 U.S.C. § 507. In the event, however, that the Debtors can show that their liability ceased before the priority periods, then the NLRB has consented to withdraw the priority status of its claim and assert only a general unsecured claim. *Id.* at 12. The NLRB maintains that it is not until the Debtor makes its books and records available for inspection that an exact calculation can be made or a determination reached on asserting a priority status. *Id.* Without the Debtor's cooperation, argues the Board, no reduction in the present amount of the Board's claim is possible.

Oral argument was heard on March 22, 1989.

## II

Once again, we are called upon to determine the appropriate allocation of dispute resolution tasks between the bankruptcy court and other specialized tribunals. As we have previously held, that determination is often made on the basis of two separate, but interrelated doctrines: the doctrine of exhaustion of administrative remedies and the doctrine of primary jurisdiction. *Prudential Lines, Inc. v. United States Maritime Administration, (In re Prudential Lines, Inc.),* 79 B.R. 167, 176–78 (Bankr.S.D.N.Y.1987); *In re McLean Industries, Inc.,* 70 B.R. 852, 858–59 (Bankr.S.D.N.Y.1987).

■ The doctrine of exhaustion of administrative remedies applies where a claim is cognizable in the first instance by an administrative agency alone. Since the administrative agency alone has initial jurisdiction over that claim, the administrative process will be allowed to run its course before resort to the courts will be permitted. *United States v. Western Pac. R.*

*Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956); *accord, In re Prudential Lines, Inc.*, 79 B.R. at 177 (Doctrine of exhaustion of administrative remedies required deferral of issue of initial determination of subsidy rates to the Maritime Subsidy Board which has special expertise in that field); *Cf., In re McLean Industries, Inc.*, 70 B.R. at 858 (The exhaustion doctrine does not apply to the issue of adequacy of representation of creditors committee since Congress left to the bankruptcy court the initial power to determine the issue of adequate representation.)

■ Where both an agency and a court are properly vested with initial jurisdiction over a matter, the allocation of dispute resolution between those entities involves the doctrine of primary jurisdiction. Under that doctrine, a court with jurisdiction may defer resolution of a factual issue to another specialized tribunal or administrative agency also having jurisdiction and possessing special expertise beyond the normal competency of the referring judge. This deferral is made "in order to preserve uniformity and consistency in the regulation of the business entrusted to the agency." *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 496, 96 L.Ed. 576 (1952); *accord In re McLean Industries, Inc.*, 76 B.R. 328, 331 (Bankr.S.D.N.Y.1987).

■ Whether or not the doctrine of primary jurisdiction applies in a particular case thus depends upon the need to achieve the goal of special expertise beyond the normal competency of judges and the availability of administrative procedures to consider the issue. *In re McLean Industries, Inc.*, 70 B.R. at 859 (citations omitted). By recognizing the comparative advantages of courts and agencies for resolving a particular issue, the doctrine of primary jurisdiction is a court-made rule allocating the primary responsibility of resolving that issue to the tribunal which is uniquely qualified due to its special expertise in that field. R.J. PIERCE, S.A. SHAPIRO & P.A. VERKUIL, ADMINISTRATIVE LAW & PROCESS, 206 (1985) [hereinafter cited as PIERCE].

In cases involving determinations of unfair labor practices as defined by the National Labor Relations Act, 29 U.S.C. § 158, Congress has entrusted the National Labor Relations Board with the responsibility for determining the appropriate remedy to cure the violation. In bankruptcy, accommodation of national labor relations policy and the special expertise of the Board generally applies. *Nathanson v. National Labor Relations Board*, 344 U.S. 25, 30, 73 S.Ct. 80, 83–84, 97 L.Ed. 23 (1952). There, the United States Supreme Court held that the liquidation of an unfair labor practice claim should have been deferred by the bankruptcy court to the NLRB in order for the Board to determine the appropriate remedy. 344 U.S. at 30, 73 S.Ct. at 83.

In *Nathanson*, the NLRB had ordered the debtor company to pay certain employees back pay to remedy unfair labor practices of the debtor. Before the NLRB order was enforced by the Court of Appeals, an involuntary petition in bankruptcy was filed against the debtor and an order for relief was granted under the former Bankruptcy Act. The Court of Appeals then enforced the Board's order and the Board subsequently filed a proof of claim in the amount of the back pay award. The claim was disallowed by the referee. The District Court set aside the disallowance and the Court of Appeals affirmed, holding that the Board's order was a provable claim in bankruptcy, that the Board could liquidate the claim and that it was entitled to priority as a debt owing to the United States under § 64(a)(5) of the former Bankruptcy Act. 11 U.S.C. § 104(a)(5) (1938) (repealed 1978). The Supreme Court reversed on the last ground. It held that simply because the Board was an agency of the United States, it did not follow that any debt owed it was a debt owed the United States. 344 U.S. at 27, 73 S.Ct. at 82.

In so ruling, the Supreme Court explicitly recognized the NLRB as the authority chosen by Congress to enforce the National Labor Relations Act. 344 U.S. at 27, 73 S.Ct. at 82. The Court found that a back pay order is a unique remedy "designed to vindicate the public policy of the statute by

making the employees whole for losses suffered on account of an unfair labor practice." *Id.* In response to the trustee's claim in *Nathanson* that liquidation of the back pay award should not have been referred to the NLRB, the Supreme Court characterized the liquidation of back pay claims as "one of the functions confined solely to the Board." 344 U.S. at 29, 73 S.Ct. at 83.

Although the *Nathanson* Court recognized that the bankruptcy court usually supervised the liquidation of claims, it added that "that rule is not inexorable." 344 U.S. at 29, 73 S.Ct. at 83. Articulating the administrative doctrine first labeled by the Supreme Court as one of "preliminary jurisdiction," *see United States Navigation Co., Inc. v. Cunard Steamship Co.,* 284 U.S. 474, 485, 52 S.Ct. 247, 250, 76 L.Ed. 408 (1932) and subsequently known as the doctrine of primary jurisdiction, PIERCE at 208–10, the Court ruled:

> A sound discretion may indicate that a particular controversy should be submitted to another tribunal for litigation. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision ... It is the Board, not the referee in Bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.

344 U.S. at 30, 73 S.Ct. at 83. In sum, outside of bankruptcy, the jurisdiction of the NLRB with respect to a claim of unfair labor practice is often said to be exclusive, *e.g., Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Under *Nathanson,* the interplay of the need for claim resolution in bankruptcy cases and Congress having entrusted such matters to the expertise of the NLRB enables the bankruptcy court to apply its sound discretion. But that discretion is sharply limited. *Nathanson* squarely commands that the NLRB is to be given "a reasonable time for its administrative determination." 344 U.S. at 30, 73 S.Ct. at 83.

### III

■ In urging a different exercise of that discretion, Holland principally asserts that it has negotiated a plan of reorganization with its principal creditors, including Empire Savings Bank, whose claim is secured by much if not all of its assets; and, that Empire requires confirmation within eight weeks from the hearing on the instant motion. From this, Holland argues that *Nathanson* no longer applies, or, that its application is to be sharply limited here by the Court estimating the Board's claim pursuant to § 502(c)(1) of the Bankruptcy Code so that Holland can proceed with its plan of reorganization. Section 502(c)(1) of the Code provides:

> There shall be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c)(1).

### A.

There is no debate regarding Holland's having negotiated a plan that requires speedy confirmation. But, its having done so is no warrant in this case for not affording, in the words of the *Nathanson* court, the Board with "a reasonable time to make its determination." 344 U.S. at 30, 73 S.Ct. at 83.

The claim at issue here was filed over a year ago, on January 13, 1988. It was not objected to by the Debtor until January 24, 1989. To excuse that delay, the Debtor avers that it had no reason to object prior to the Third Circuit's rendering of its Judgment and Order on October 24, 1988. But even then, it waited three months to file its objection.

In contrast, the Board began the process of determining the appropriate amount of back pay to be awarded a month before the Debtor objected to its claim.[1] It was the Debtor who delayed this process by failing to respond to the attempts made by the NLRB regarding compliance with the Board's order. In December 1988, the Board's Regional Director notified the Debtor in writing that it would be contacted shortly by the Compliance Supervisor to arrange for inspection of pay and work records in order to compute the back pay award. The Board received no response from the Debtor. NLRB's Response to Debtor's Objection to Proof of Claim, Attachment B ("NLRB Response"). In February 1989, the Board's Compliance Supervisor unsuccessfully attempted to reach Debtor's counsel by telephone and sent a follow-up letter documenting his efforts to make the necessary arrangement to inspect the Debtor's records. Again, there was no response from the Debtor. NLRB Response, Attachment C. Then, in March 1989, the Regional Office telephoned the Debtor and sent another letter requesting "all payroll records, social security payment records ... and all other records necessary to analyze and compute the full and accurate amount of back pay due the various discriminatees under the terms of the Board's Order." Reply of NLRB to Debtor's Memorandum, 3 n. 2. As of the date of oral argument, March 22, 1989, the Debtor still had not provided these documents to the Board. That the Debtor seeks to have this Court estimate the NLRB's claim is no excuse. The documents are relevant to both the proceeding before the Board and the estimation process.

Moreover, even were the Debtor more forthcoming, the reasonable time required by *Nathanson* for the NLRB to perform the functions assigned to it by Congress is not to be totally abrogated, as the Debtor urges here, merely because the Debtor has negotiated a payment to a secured creditor by a certain date. The Board's functions are not to be taken so lightly. A debtor should not be able to structure its plan negotiations so that the Congressional mandate is incapable of being performed.

To this is to be added the notion that the back pay issues should not have to be resolved twice. *See Prudential Lines*, 79 B.R. at 179; *accord Gary Aircraft Corp. v. United States*, 698 F.2d 775, 784 (5th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983). The NLRB claims are asserted against both Holland and Shortway since the NLRB Order has been issued against both Holland and Shortway. Holland does not suggest that the claim against Shortway should not be resolved by the Board, even though it presents exactly the same issues as the claim against Holland. Estimation by this Court of the claim against Holland could therefore lead to a result potentially inconsistent with the Board's resolution of the same issues with respect to Shortway—a resolution by the agency charged by Congress with resolving the such issues and possessing the administrative expertise, beyond the general competence of judges, to do it. For all these reasons, it would be an abuse of discretion to proceed to resolve those issues in this Court.

Moreover, it is not all clear that the estimation process will take significantly less time than proceedings before the NLRB. Holland asserts that, since proper determination of the back pay award will require consideration of whether each of the thirty-one former Suburban employees were otherwise employed, withdrew from the labor market or received equivalent employment, *see Nathanson*, 344 U.S. at 29–30, 73 S.Ct. at 83–84, this court should under § 502(c)(1) make assumptions regarding those issues and allow the claim in

---

**1.** In determining back pay remedies, the NLRB first holds a hearing to determine whether an unfair labor practice has been committed, and, if so, whether a back pay remedy is appropriate. *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 411, 80 S.Ct. 441, 447, 4 L.Ed.2d 400 (1960). Once the NLRB's order is affirmed by the Court of Appeals, the Board then seeks to liquidate the claim. This separate proceeding, subject to appellate court review pursuant to 29 U.S.C. § 160(f) (1988), is an integral part of the Board's adjudication and remedy of unfair labor practices. *NLRB v. Sunshine Mining Co.*, 125 F.2d 757, 761 (9th Cir.1942).

an estimated amount. We fail to see how the court is to make those assumptions intelligently absent consideration of much of the evidence that would be brought before the NLRB concerning each employee's age, salary and subsequent employment history. There is nothing on this record indicating that the NLRB will be unable to make its determination in the near term.

### B.

Nor can it be said, moreover, that *Nathanson* is no longer good law or has been legislatively overturned by § 502(c)(1) as Holland argues in this proceeding. The *Nathanson* policy of allowing the NLRB to proceed with unfair labor practice cases and to craft back pay awards has been continued under the Code. Although such proceedings are generally proceedings with respect to pre-petition claims, it has been widely recognized that they serve a governmental purpose and therefore come within the governmental regulation exception to the automatic stay set forth in § 362(b)(4) of the Code. *See Ahrens Aircraft, Inc. v. NLRB*, 703 F.2d 23, 24 (1st Cir.1983); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir.1981); *Nicholas, Inc. v. NLRB (In re Nicholas, Inc.)*, 55 B.R. 212, 215 (Bankr.D.N.J.1985); *D.M. Barber, Inc. v. Valverde (In re D.M. Barber, Inc.)*, 13 B.R. 962 (Bankr.N.D.Texas 1981). These courts have reaffirmed, under the Code, the primacy to be afforded the NLRB, expressed in *Nathanson*, especially in view of the established policy of deferring to the Board the design of remedial orders where there has been a determination that unfair labor practices have been committed. *See In re D.M. Barber, Inc.*, 13 B.R. at 963.

*NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, *reh'g and reh'g en banc denied* (8th Cir.1985) and *In re Unit Parts Co.*, 9 B.R. 386 (W.D.Okla.1981) on which Holland relies do not diminish the current vitality of *Nathanson*.

The Eighth Circuit in *Superior Forwarding* held that a bankruptcy court may, upon motion by the debtor, enjoin the NLRB from proceeding with hearings on unfair labor practice allegations arising from the debtor's unilateral modification or rejection of a collective bargaining agreement because the Supreme Court in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), had held that a unilateral post-petition breach of a collective bargaining agreement by a debtor-in-possession did not give rise to an unfair labor practice. 762 F.2d at 699–701. Here, it has already been established that Holland has committed an unfair labor practice.

In *Unit Parts*, the District Court denied a motion by the NLRB for a stay pending appeal from a bankruptcy court order denying a motion to abstain from liquidating an unfair labor practice claim on the ground that Congress barred appeals from abstention decisions. Whatever precedence the bankruptcy court's order had was vitiated by its subsequent vacature by that court. · *See In re Unit Parts Co.*, No. 88–01101 (Bankr.W.D.Okl. Oct. 31, 1981).

It simply cannot be said that *Nathanson* has been undercut by subsequent case law. As the automatic stay cases cited above make clear, the policy of affording the NLRB the opportunity to carry out the regulatory task of initially defining and remedying unfair labor practices assigned to it by Congress remains vibrant. It has the expertise in the field beyond the general competence of judges. That expertise in remedying unfair labor practices uniquely qualifies it to "preserve uniformity and consistency" in upholding the public policies set forth in the National Labor Relations Act. *Far East Conference*, 342 U.S. at 574–75, 72 S.Ct. at 494–95. The theory of primary jurisdiction, absent command by Congress, requires that it be given a reasonable opportunity to perform that task.

### C.

Apparently, in recognition of these tenets of allocation of dispute resolution, Holland seeks to find such a command in the "shall" clause of § 502(c)(1). That effort, however, is without merit.

It is not at all apparent that § 502(c)(1) is inconsistent with *Nathanson*. The statutory language speaks of estimating contin-

gent or liquidating claims "the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case...." 11 U.S.C. § 502(c)(1). The *Nathanson* court required referral "to the Board [of] the liquidation of the claim, giving the Board a reasonable time for its administrative determination." *Nathanson*, 344 U.S. at 30, 73 S.Ct. at 83. These mandates are complementary. Affording the Board a reasonable time to fix a remedy for an unfair labor practice is not an undue delay. Particularly is that so in the instant case where the delay to date is hardly attributable to the NLRB and the time period within which Holland seeks to confirm its plan is but merely the product of its negotiation with Empire.

Furthermore, there is no indication that Congress, in enacting § 502(c)(1), sought to legislatively override *Nathanson*. Like other sections of the Bankruptcy Code, § 502(c)(1) is to be interpreted in light of the provisions of the former Bankruptcy Act that Congress sought to change. *See In re Stable Mews Associates*, 35 B.R. 603 (Bankr.S.D.N.Y.1983). Under the former Bankruptcy Act, § 57(d), 11 U.S.C. § 93 (repealed), precluded the allowability of contingent and unliquidated claims that were not capable of reasonable estimation or where liquidation or estimation would unduly delay estate administration. Thus, the creditor received no distribution. 3 L. KING, R. BABITT, A. HERZOG & R. LEVIN, COLLIER ON BANKRUPTCY ¶ 502.03 (1988). In § 502(c)(1), Congress changed the concept by requiring estimation if the fixing or liquidation of a claim would unduly delay estate administration. *Id.* The use of the word "shall" expresses that concept and thus requires the creditor to receive an appropriate distribution. So understood, the language of § 502(c)(1) gives no indication that Congress sought to override *Nathanson*.

Nor does the legislative history give any indication of such a desire. The Senate and House reports speak merely of undue delay; they make no reference to proper allocation of dispute resolution between court and agency. See H.R.REP. NO. 595, 95th Cong., 1st Sess. 354 (1977); S.REP. NO.

989, 95th Cong., 2d Sess. 65 (1978), U.S. Code Cong. & Admin.News 1978, 5787.

A deviation from the policies set forth in *Nathanson* would be a departure from "policy considerations of great longevity and importance." *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989). The absence of a clear Congressional intent to depart from the longstanding policy of affording the NLRB a reasonable opportunity, *Ron Pair Enterprises, Inc.*, at —— ——, 109 S.Ct. at 1032, confirms that it is the NLRB, and not this Court, that should in a reasonable time, liquidate the back pay claim at issue here. *See Kelly v. Robinson*, 479 U.S. 36, 47, 48, 107 S.Ct. 353, 359, 360, 93 L.Ed.2d 216 (1986); *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 757, 88 L.Ed.2d 859 (1986), *reh'g denied*, 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986).

For the foregoing reasons, an order is to be entered staying proceedings on the Debtor's objection to the NLRB's proof of claim pending further order of this Court. Counsel for the NLRB is to settle an order consistent with this Opinion.