In re ST. MARY HOSPITAL, Debtor.

Roger HISER, Trustee in Bankruptcy, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVA-NIA, DEPARTMENT OF PUBLIC WELFARE and John M. White, Jr., Secretary, Commonwealth of Pennsylvania, Department of Public Welfare, Defendants.

Bankruptcy No. 88–11421S.
Adv. No. 91–0038S.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 5, 1991.

W. Thomas Berriman, Jeffrey B. Schwartz, David S. Fishbone, Ciardi, Fishbone and DiDonato, Philadelphia, Pa., for trustee.

John A. Kane, Chief Counsel, Thomas B. York, Chief of Litigation, Office of Legal Counsel, Harrisburg, Pa., Thomas Blazusiak, Northeastern Regional Counsel, Allentown, Pa., for defendants.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

### A. HISTORY OF THE MATTERS IN DISPUTE.

On January 15, 1991, the instant adversary action was instituted by ROGER HISER ("the Trustee"), the trustee in bankruptcy for ST. MARY HOSPITAL ("the Debtor"), against the COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE ("DPW") and JOHN H. WHITE, JR., the Secretary of DPW.

The history of the underlying Chapter 11 case, filed April 27, 1988, is set forth in five prior Opinions arising out of this case, reported at 86 B.R. 393 (Bankr.E.D.Pa.1988) (court enjoins hospital closure); 89 B.R. 503 (Bankr.E.D.Pa.1988) (court refuses to require the Debtor to repay Medicare overpayments to retain Medicare affiliation); 97 B.R. 199 (Bankr.E.D.Pa.1989), aff'd, 120 B.R. 25 (E.D.Pa.1990), aff'd, 931 F.2d 51 (3d Cir.1991) (court declines a request for an award of attorneys' fees from the estate of counsel for community participants); 101 B.R. 451 (Bankr.E.D.Pa.1989) (court awards the Trustee certain damages from doctors who removed a clinic from the hospital); and 117 B.R. 125 (Bankr.E.D.Pa. 1990) (court resolves disputes between the Debtor and the purchaser of its assets) (cited hereafter as "*St. Mary V*"). The history of this case can be ascertained chiefly from review of the first of these Opinions, 86 B.R. at 395–97, and the third, 97 B.R. at 200–02. We note that this court, on April 5, 1989, confirmed a Plan of Reorganization submitted by the Trustee and Franciscan Health Services, Inc. ("FHS"), the centerpiece of which was the sale of the Debtor's assets.

The Complaint in this proceeding attacks the accuracy of a Termination Cost Report filed by DPW on June 5, 1989, addressing reimbursement due to the Debtor for treatment of Medicaid beneficiaries for the period from July 1, 1988, to December 31, 1988. In the Complaint, the Trustee avers, in four Counts of the Complaint, that DPW, by way of the Amended Financial Report, improperly—

(1) disallowed in full $200,000.00 in Medicaid claims submitted following the Final Audit without a rational basis, and without providing a reasonable explanation to enable the Trustee to form a conclusion or basis for the disallowance;

(2) disallowed in full $274,602.00 for capital costs for buildings and fixtures; $126,021.00 in professional fees approved by Orders of this court; $91,202.00 in pension costs paid by FHS on behalf of the Debtor; and $39,086.00 in collection fees paid by Debtor estate without requesting information from the Trustee which may have reduced the amount of some of the disallowances;

(3) disallowed in full, through the application of inaccurately low "ceilings" on

Medicaid reimbursement, $251,726.00 relating to the operating costs of the Debtor's psychiatric unit and $727,218.00 of the Debtor's capital costs without a rational basis; and

(4) applied the "ceilings" referenced in Count Three in a manner inconsistent with the approved Commonwealth of Pennsylvania Medicaid Plan ("the Plan").

The Trustee prayed that this court enter an Order requiring that DPW reimburse the Debtor for the disallowed amounts by recalculating the Medicaid reimbursements in conformity with federal law and regulations; enter an order declaring that disallowance of the psychiatric unit operating costs and of the reimbursable capital costs violated federal regulations and gave rise to relief under 42 U.S.C. § 1983; and grant him monetary damages, including, but not limited to, attorneys' fees and costs, as well as any further appropriate relief.

Attached as an Exhibit to the Complaint was a Stipulation settling a previous proceeding in this case, Adversary No. 89-0646, brought by the Trustee to challenge DPW's Medicaid reimbursements to the Debtor in fiscal years 1987 and the early part of 1988, which was approved by our Order of September 27, 1989. Also accompanying the Complaint was DPW's Amended Financial Report which contained a statement of the contested disallowances.

In response to the Complaint, DPW, on February 19, 1991, filed a Motion to Dismiss, Motion for Summary Judgment, and Motion for More Definite Statement ("the Motion") and a Memorandum of Law Supporting the Motion. In the Motion, DPW sought dismissal of the Complaint on two bases: (1) sovereign immunity arising from the Eleventh Amendment to the federal Constitution; and (2) the Trustee's failure to allege a factual basis upon which relief could be granted or a sufficient factual basis for entitlement to relief under § 1983. DPW sought summary judgment on the ground that the Trustee had failed to exhaust applicable administrative remedies before filing suit. Finally, in the alternative, DPW requested that this court enter an Order requiring the Trustee to file a

more definite statement of his claims within certain specified time constraints.

Upon becoming aware of the Motion and noting that a March 6, 1991, trial date had been established, this court entered an Order of February 28, 1991, deferring the disposition of the Motion until the trial date. On the trial date, the Trustee handed up to the court an Answer to the Motion and a Memorandum of Law in Support of the Answer. Accompanying these documents was an Affidavit of Jeffrey Schwartz, Esquire, special counsel for the Trustee, attesting to a letter received from Michael J. Mahoney, a DPW Claims Investigation Agent, making certain modest claims for Medicaid reimbursement subsequent to July 1, 1988. The Affidavit stated further that during the course of negotiation of the Stipulation resolving Adversary No. 89-0646, DPW had requested, but was denied, insertion therein of language specifically preserving its Eleventh Amendment sovereign immunity rights. All of the foregoing was presented in support of contentions that DPW had made an "informal proof of claim" regarding the post-July 1, 1988, Medicaid reimbursement in issue and had waived any defense based upon the Eleventh Amendment.

The parties also agreed, on March 6, 1991, that the trial should be continued until April 24, 1991, and a Pre–Trial Order geared to that trial date was entered. DPW also requested until March 18, 1991, later extended to March 25, 1991, to further support the Motion in response to the contents of the Trustee's documents. On April 3, 1991, the parties submitted a further Stipulation requesting a postponement of the trial until June, 1991, and a rescheduling the dates on the Pre–Trial Order accordingly.

In its reply to the Trustee's submissions, DPW argued that the mere dispatch of the aforementioned letter by Mahoney did not submit the DPW to this court's jurisdiction and that the absence of an agreement on the language regarding preservation of Eleventh Amendment rights foreclosed the possibility that there had been a waiver of DPW's rights in this regard. Further, in

conjunction with its exhaustion of remedies argument, the DPW argued, alternatively, that this court should stay the administrative review process pursuant to the doctrine of "primary jurisdiction."

## B. THE SOVEREIGN IMMUNITY OF DPW HAS BEEN WAIVED BY THE FILING OF PROOFS OF CLAIMS BY TWO OTHER AGENCIES OF THE COMMONWEALTH OF PENNSYLVANIA.

■ DPW concedes that proofs of claims were filed in the instant bankruptcy case by Commonwealth's Department of Revenue and its Department of Labor and Industry. However, it contends that the filing of proofs of claim by two other state agencies did not effect a waiver of DPW's sovereign immunity because "each of these [d]epartments is a separate governmental unit with a discrete function," and that its *own* failure to file a proof of claim preserved *its* sovereign immunity under the Eleventh Amendment on the basis of *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

Unfortunately for DPW, this court addressed this same issue in an almost identical factual setting in *In re St. Joseph's Hospital*, 103 B.R. 643, 651 (Bankr.E.D.Pa. 1989), and concluded as follows:

Eleventh Amendment immunity applies to the *states*, and through them to their agencies. A state may not selectively waive its immunity. *Hoffman* establishes that "a *State* that files no proof of claim ... would not be subjected to monetary recovery." 109 S.Ct. at 2823 (emphasis added). In *Hoffman*, the court had before it two cases where agencies of a state had been sued by a trustee in bankruptcy court despite the fact that neither these agencies, nor, apparently, any other agencies of the same state, had filed proofs of claim in the case in which suit was brought. The court had the opportunity to state, in its holding, that the state *agencies* could not be sued for money damages if they did not file proofs of claim. Instead, the Court, in its holding, used the broad term

"State." The Court thus left open the possibility that, in cases where any agency of the state has filed a proof of claim, this act constituted a waiver by the *state* of its sovereign immunity.

The Defendants' argument that a waiver by other agencies of Pennsylvania does not destroy DPW's immunity is based upon the language of 11 U.S.C. § 106(a) and (b) of the Code. It is true, as the Defendants argue that *those* sections provide a basis for jurisdiction only as to claims arising out of the same transaction or occurrence, or to the extent of the particular governmental agency's claims. However, the Debtor's invocation of § 106 here is not dependent upon §§ 106(a) or 106(b). Instead, they depend on other federal jurisdictional bases, including Medicaid Act and 42 U.S.C. § 1983, as applied through § 106(c).

The converse of the proposition stated in *Hoffman*, *i.g.*, that the filing of a proof of claim by the state allows any recovery against the state, even a "monetary recovery," is argued by the Debtor here. We sustain this argument and hold that, where any of a state's agencies has filed a proof of claim in a bankruptcy case, that state has consented to the jurisdiction of the federal courts as to its claims *inter se* with the Debtor. Since claims have been filed by agencies of the Commonwealth of Pennsylvania in this bankruptcy case, any relief, even a "monetary recovery," may be had against DPW by the Debtors here.

*Accord, In re Cook United, Inc.*, 117 B.R. 301, 304–05 (Bankr.N.D.Ohio 1990). *Contra, In re Four Seasons Care Centers, Inc.*, 119 B.R. 681, 684 (Bankr.D.Minn. 1990).

In debating the correctness of our holding in *St. Joseph's*, DPW cites to the decision in *Wilson v. Neff*, 134 Pa.Cmwlth. 446, 578 A.2d 1014 (1990). In *Wilson*, the plaintiff was injured in an automobile accident and intended to file suit against the Commonwealth of Pennsylvania Department of Transportation ("PENNDOT") for damages. However, the Complaint filed erro-

neously identified the Commonwealth of Pennsylvania itself as a defendant instead of PENNDOT. PENNDOT filed a preliminary objection to the complaint averring lack of jurisdiction and that the statute of limitations had run as to any possible claim against it. The court sustained the preliminary objection and dismissed the Complaint without leave to amend. Presumably, this decision is cited to establish that the Commonwealth and its agencies are distinct entities.

However, our decision in *St. Joseph's* emphasized that, in *Hoffman*, the Court specifically stated that only a *State* (*e.g.*, the Commonwealth) which did not file a proof of claim, as opposed to referencing an *agency* of the state, would not be deemed to have waived sovereign immunity. The Court, therefore, suggested that it was improper, in interpretation of § 106 of the Bankruptcy Code, to make the distinction which the court in *Wilson* made in the context of a state-law tort claim.

DPW, in its submissions, argues that *Hoffman* did not directly address the issue decided in *St. Joseph's, i.e.,* the waiver of sovereign immunity for all Commonwealth agencies by the filing of a claim by one of them. We agree. However, it is not uncommon for lower courts to fill the interstices of Supreme Court decisions. The important and accurate concession of DPW is that *Hoffman* did not preclude the result reached by us in *St. Joseph's.* We will therefore follow our ruling in *St. Joseph's.*

The other arguments raised by the Trustee in support of DPW's waiver of "sovereign immunity" in this context are not without some force or support as well. We do not believe that Mahoney's letter to the Trustee's counsel or any other act by DPW rose to the level of DPW's making an "informal proof of claim" against the Debtor's estate for post-July 1, 1988 Medicaid claims. There was no "form of a pleading filed in the Bankruptcy Court which shows 'that a demand is made against the estate' and 'the creditor's intention [is] to hold the estate liable'" by DPW. *In re Wilbert Winks Farms, Inc.,* 114 B.R. 95, 97 (Bankr. E.D.Pa.1990), quoting *In re Ungar,* 70 B.R.

519, 521 (Bankr.E.D.Pa.1987), which, in turn, cited *In re Thompson,* 227 F. 981, 983 (3d Cir.1915).

Nevertheless, the history of resolution of Medicaid reimbursement disputes between the Debtor and DPW for prior fiscal years in proceedings in this case in this court is certainly persuasive evidence of the existence, if not the filing, of a submission of some measure of "claim" against the Debtor's estate to this court. The practice of asserting "claims" against the estate, even if same did not rise to the level of an informal proof of claim, was held sufficient to constitute a waiver of Eleventh Amendment defenses in *In re Town & Country Home Nursing Services, Inc.,* 112 B.R. 329, 333–34 (Bankr. 9th Cir.1990). Also, DPW's involvement in these disputes in this court is an indication of DPW's substantial "presence" in this case. *See In re Corporacion de Servicios Medico Hospitalarios de Fajardo,* 123 B.R. 4, 6–7 (Bankr. D.P.R.1991).

We therefore conclude that sovereign immunity is not a bar to the Trustee's maintenance of this proceeding.

## C. DPW'S MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR A MORE DEFINITE STATEMENT MUST BE DENIED.

■ We can easily dispose of DPW's contentions that vagueness and lack of specificity regarding the nature of the Trustee's differences with DPW's Cost Termination Report would justify dismissal of the Complaint pursuant to Bankruptcy Rule ("B.Rule") 7012(b) and Federal Rule of Civil Procedure ("F.R.Civ.P.") 12(b)(6), or would justify an Order directing that it be amended to be more specific pursuant to B.Rule 7012(b) and F.R.Civ.P. 12(e).

As we stated in *In re Dinkins,* 79 B.R. 253, 256, 257 (Bankr.E.D.Pa.1987), a F.R. Civ.P. 12(b)(6) motion

"is viewed with disfavor and is rarely granted" and ... such relief is "to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief,"

quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357, at 598, 604 (1969)....

. . . . .

Therefore, the instant Motion can be granted only if we deem that the Movant's positions on the issues raised by it are not only [not] meritorious, but incapable of correction by amendment. If amendments will conceivably cure the defects, then we should not dismiss the Complaint, but allow the Debtor to amend her Complaint to make the necessary corrections.

We have little doubt that the Trustee *could* state claims against DPW which would sustain a cause of action, at least after an opportunity to amend the Complaint.

With respect to DPW's F.R.Civ.P. 12(e) motion, as we noted in *In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (Bankr.E.D.Pa.1986), motions for a more definite statement "are not favored" and are to be "sustained only if a Complaint is unintelligible, not merely if it is lacking in detail."

As we indicated in *American Int'l Airways, supra*, a F.R.Civ.P. 12(e) motion is particularly inapt when the defendant knows more about the underlying facts than the plaintiff, and hence has no good faith need to be apprised of the facts relevant to the plaintiff's claims. 66 B.R. at 645–46. Our review of the Amended Financial Report of DPW which sets forth the disallowances that gave rise to the Complaint reveals that the Report is not specific at all in elucidating the reasons for the disallowances. Therefore, the Trustee is not apprised by the Report of any but conclusory statements which serve as the basis for the disallowances. It is difficult, if not impossible, for the Trustee to be more specific than he has been in attacking the validity of these disallowances, simply because DPW, in making the disallowances, has told him so little. In these circumstances, the Complaint is as specific as it could be.

We do acknowledge that the Complaint is indeed not very specific. However, this lack of specificity appears to be a consequence of the fact that the issues have not been sharpened because the contemplated administrative review process has barely commenced. While these circumstances certainly would not justify the granting of DPW's F.R.Civ.P. 12(b)(6) or 12(e) motions, they do, as we indicate in the following discussion, justify our stepping back to allow the administrative review process to run its course for at least some period.

**D. PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION, WE WILL SUSPEND THIS PROCEEDING FOR 120 DAYS TO ALLOW ADMINISTRATIVE REVIEW TO PROCEED, ALTHOUGH WE WILL DENY DPW'S MOTION FOR SUMMARY JUDGMENT ON THIS BASIS.**

The doctrine of exhaustion of administrative remedies requires that "parties first use all prescribed administrative measures for resolving a conflict before they seek judicial remedies." *Facchiano v. United States Dep't of Labor*, 859 F.2d 1163, 1166 (3rd Cir.1988), *cert. denied*, 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989). The Supreme Court in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), has delineated the following factors for courts to consider in determining whether it is appropriate to require exhaustion of administrative remedies before a court proceeds to decide issues placed before it:

(1) Administrative remedies should be exhausted in instances "where a relevant statute provides that certain administrative procedures shall be exclusive." *Id.* at 193, 89 S.Ct. at 1662.

(2) The administrative process should not be prematurely interrupted, since an applicable administrative agency is created expressly to apply the statute involved in the controversy, and it is desirable for the administrative agency to develop the factual record and "agency decisions are frequently of a discretionary nature or frequently require expertise ... the agency should be given the first chance to exercise that discretion or to apply that expertise." *Id.*

(3) Because administrative agencies are created as entities separate from the judicial system and are imbued with specific powers and duties, courts "should not interfere with the agency until it has completed its action, or else has clearly exceeded its jurisdiction." *Id.* at 194, 89 S.Ct. at 1663.

(4) The judicial review process may be stymied by the presence of an inadequate factual record, due to a failure to permit the administrative agency to develop a factual record. *Id.*

(5) The controversy may be resolved through participation in the administrative process, in that the administrative agency is afforded the opportunity to correct its own errors, thus preventing the necessity of court intervention. *Id.*

(6) "Frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.*

Ultimately, after its detailed discussion of these principles, the Court reversed the decisions of lower courts which required exhaustion of administrative remedies, on two bases. Firstly, the Court observed that, in the context of the *McKart,* in contrast to the instant case, the doctrine of exhaustion of administrative remedies would require the plaintiff to subject himself to potential criminal prosecution. *Id.* at 197, 89 S.Ct. at 1664. Secondly, the Court reasoned that resolution of the controversy in question did not require the expertise or the discretion of the pertinent administrative agency, but, rather, required only statutory interpretation. *Id.* at 198–99, 89 S.Ct. at 1665.

The factors to be considered in the application of the exhaustion doctrine developed in *McKart* were revisited by the Court in

*McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). In *McGee,* speaking of the decision in *McKart,* the Court held that the resolution of the controversy in *McKart* "would not have been aided by the exercise of special administrative expertise," *id.* at 485, 91 S.Ct. at 1569, and that statutory interpretation was not, in that instance, deemed to be a matter within the discretion of the pertinent administrative agency. However, by way of contrast with the facts before it in *McGee,* the Court found that the administrative agency's expertise and discretion were necessary for resolution of underlying factual issues and that statutory interpretation was not in issue. *Id.* at 486, 91 S.Ct. at 1569.

*McGee* affirmed decisions of the lower courts requiring exhaustion of administrative remedies. The Court observed that the exhaustion doctrine was appropriately applied in that case because the decision depended upon "careful factual analysis and ... the [petitioner] ha[d] completely sidestepped the administrative process designed to marshal relevant facts and resolve factual issues in the first instance." *Id.* at 488, 91 S.Ct. at 1571.

In this Circuit, the exhaustion doctrine is recognized as governing the "timing of an appeal to a court from agency action." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 736 (3rd Cir. 1983). Mirroring the factors expressed in the *McKart* and *McGee* decisions, resort to the exhaustion doctrine has been held appropriate to permit the administrative agency to create a factual record [1], initially apply its expertise and discretion to the controversy,[2] correct its own errors,[3] eliminate judicial controversies,[4] prevent inter-

---

1. *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1252 (3rd Cir.1987); *Facchiano, supra,* 859 F.2d at 1167 (3rd Cir.1988); and *Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 (3rd Cir.1980). *See also Morrison-Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1223 (9th Cir.1987); *Russi v. Weinberger,* 373 F.Supp. 1349, 1353–54 (E.D.Va.1974); and *In re Tidewater Memorial Hospital, Inc.,* 106 B.R. 876, 880 (Bankr.E.D.Va.1987).

2. *Flying Tiger, supra,* 830 F.2d at 1252; and *Morrison–Knudsen, supra,* 811 F.2d at 1223.

3. *Flying Tiger,* 830 F.2d at 1252; *Morrison–Knudsen,* 811 F.2d at 1223.

4. *Flying Tiger,* 830 F.2d at 1252.

ruption of the administrative processes,[5] and "prevent courts from frustrating congressional decisions to have certain disputes resolved originally in administrative forums."[6]

█ The exhaustion doctrine has, by way of comparison, been held not applicable to situations where the administrative process is inadequate to prevent potential irreparable injury,[7] where there is a challenged administrative action which clearly and unambiguously violates statutory or constitutional rights,[8] the action before the court involves purely legal issues,[9] and exercise of the administrative process would be futile.[10]

The Third Circuit Court of Appeals has applied *McKart*'s exhaustion doctrine factors within the context of a wide range of controversies, including Selective Service disputes like *McKart* and *McGee*,[11] habeas corpus petitions,[12] a federal employee discharge action[13], a petition by a private company for judicial review of a rule promulgated by the United States Environmental Protection Agency,[14] and a petition for a writ of mandamus filed by a securities firm to enjoin a securities association from pursuing its investigation.[15]

It is significant to note that, in Medicaid controversies, the federal courts have exhibited a reticence to intrude into the administrative process. In *Children's Hospital v. Secretary of Dep't of Public Welfare*, 568 F.Supp. 1001, 1009 (E.D.Pa.1983), it was held that "review of non-adjudicatory federal or state administrative agency action" in this area is necessarily limited. Quoting *Mississippi Hospital Ass'n, Inc. v. Heckler*, 701 F.2d 511, 516 (5th Cir.1983), the *Children's Hospital* court observed, 568 F.Supp. at 1009, that, in reference to the reimbursement rates allowed by hospitals participating in the Medicaid program,

"[t]hese [state and federal] agencies are authorized by statute to develop Medicaid's payment schemes. The function and expertise of the federal courts in this sphere is limited, and our role does not extend to reweighing or rethinking the financial concerns behind a particular plan."

*See also, e.g., In re Madeline Marie Nursing Homes*, 694 F.2d 433, 440–43 (6th Cir. 1982) (bankruptcy court criticized for not attempting to understand state's Medicaid regulatory scheme); and *Wilmac Corp. v. Heckler*, 633 F.Supp. 1000, 1007 n. 3 (E.D. Pa.1986) (courts have a "limited role" in reviewing state Medicaid plans).

Courts have, accordingly, expressed reluctance to review federal Medicare decisions without exhaustion of available administrative remedies. *See, e.g., Heckler v. Ringer*, 466 U.S. 602, 613–19, 104 S.Ct. 2013, 2020–24, 80 L.Ed.2d 622 (1984); *In re St. Mary Hospital*, 123 B.R. 14, 16–18 (E.D.Pa.1991); *In re Clawson Medical, Rehabilitation & Pain Care Center, P.C.*, 12 B.R. 647, 653 (E.D.Mich.1981); and *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr.M.D.Fla.1990). *But see In re Tidewater Memorial Hospi-*

---

**5.** *Cheyney State, supra,* 703 F.2d at 736; *Russi, supra,* 373 F.Supp. at 1353–54; and *Tidewater, supra,* 106 B.R. at 880.

**6.** *Facchiano,* 859 F.2d at 1167. *See also Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1136 n. 21 (3rd Cir.1979).

**7.** *Facchiano,* 859 F.2d at 1168; *Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 245 (3rd Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981).

**8.** *Facchiano,* 859 F.2d at 1167; and *Susquehanna Valley,* 619 F.2d at 245.

**9.** *Flying Tiger,* 830 F.2d at 1253.

**10.** *Facchiano,* 859 F.2d at 1168.

**11.** *United States v. Hunter,* 482 F.2d 623 (3d Cir.1973); *United States v. Shriver,* 473 F.2d 436 (3rd Cir.1973); and *United States v. Thompson,* 431 F.2d 1265 (3rd Cir.1970).

**12.** *United States v. Arnold,* 535 F.2d 848 (3rd Cir.1976); and *Grant v. Hogan,* 505 F.2d 1220 (3rd Cir.1974).

**13.** *Barnes v. Chatterton,* 515 F.2d 916 (3rd Cir. 1975).

**14.** *Dow Chemical Co. v. United States Environmental Protection Agency,* 605 F.2d 673 (3d Cir. 1979).

**15.** *First Jersey Securities v. Bergen,* 605 F.2d 690 (3rd Cir.1979).

*tal, Inc.*, 106 B.R. 876, 880–81 (Bankr.E.D. Va.1989); *In re Shelby County Healthcare Services of Al, Inc.*, 80 B.R. 555, 561 (Bankr.W.D.Ga.1987); and *In re Townview Nursing Home*, 28 B.R. 431, 440–41 (Bankr.S.D.N.Y.1983). *Cf. In re T.D.M.A., Inc.*, 66 B.R. 992, 995–97 (Bankr.E.D.Pa. 1986).

Related to, but not identical with, the exhaustion doctrine is the doctrine of primary jurisdiction. Like the exhaustion doctrine, the primary jurisdiction doctrine is "concerned with promoting the proper relationships between courts and administrative remedies, but each comes into play under different circumstances." *Cheyney State, supra*, 703 F.2d at 736, citing *United States v. Western Pacific Railroad*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). Primary jurisdiction allocates the initial, "primary" responsibility of issue resolution to the tribunal most uniquely qualified to hear it due to its expertise, whether it be judicial or administrative. *See In re Mountain View Coach Line, Inc.*, 99 B.R. 555, 559 (Bankr.S.D.N.Y.1989); *In re Robinson Truck Lines, Inc.*, 89 B.R. 584, 587 (Bankr.N.D.Miss. 1988), quoting *Western Pacific, supra*, 352 U.S. at 63–64, 77 S.Ct. at 164–65; and *In re Prudential Lines, Inc.*, 79 B.R. 167, 178 (Bankr.S.D.N.Y.1987).

■ The doctrine of primary jurisdiction furthers a process of smooth interaction between courts and administrative agencies in the resolution of issues where both the agency and the court have jurisdiction over a cause of action. *Cheyney State, supra*, 703 F.2d at 736; *In re Drexel Burnham Lambert Group*, 120 B.R. 724, 740 (Bankr. S.D.N.Y.1990); and *Mountain View, supra*, 99 B.R. at 559. Application of the primary jurisdiction doctrine is appropriate where jurisdiction for decision-making lies in both the judicial and administrative agency provinces, *Cheyney State, supra*, 703 F.2d at 736; there are issues of fact raised which are not within the conventional experience and expertise of the particular court, *Baltimore Bank for Cooperatives v. Farmers Cheese Corp.*, 583 F.2d 104, 108 (3d Cir.1978); *Mountain View,*

*supra*, 99 B.R. at 559; and *Robinson Truck, supra*, 89 B.R. at 587, *supra;* and the exercise of administrative agency discretion is an area created by Congress for regulation of that subject area. *Id.;* and *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 243 (5th Cir.1976).

Concomitant with the primary jurisdiction doctrine is the principal that a court should defer to resolution of a factual issue or issues by the "specialized tribunal or administrative agency also having jurisdiction and possessing expertise beyond the normal competency of the referring judge." *Mountain View, supra*, 99 B.R. at 559. *See also Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952); *Drexel Burnham, supra*, 120 B.R. at 740; *Prudential Lines, supra*, 79 B.R. at 178; and *In re McLean Industries, Inc.*, 76 B.R. 328, 331 (Bankr.S. D.N.Y.1987).

■ When a court defers to a specialized tribunal under the doctrine of primary jurisdiction, the court does not surrender its jurisdiction over the matter before it. Rather, it stays the proceeding before it and postpones exercise of its decision-making powers until the completion of the administrative process. *See Shelby County, supra*, 80 B.R. at 562.

Generally, a court's stay of a proceeding before it is not unusual. In fact, the

"power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes [sic] on its docket with economy of time and effort for itself, for counsel, and for litigants."

*Cheyney State, supra*, 703 F.2d at 737, quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936).

■ In the instant proceeding, the issues raised in the Complaint center around the DPW's disallowance of certain costs incurred by the Debtor in its servicing of Medicaid patients. In challenging costs disallowed by DPW, the Debtor has filed what it has termed a turnover action, pursuant to 11 U.S.C. § 542(a) seeking to recover allegedly improperly disallowed

funds from DPW. These disallowances all occurred in the post petition era of administration of the Debtor's estate, since the entire period in issue was post-petition. Pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(E), the fact that this proceeding relates to a cause of action which arose in the course of postpetition administration of this case appears to render it a core proceeding within the jurisdiction of the court. *See In re Ben Cooper, Inc.*, 896 F.2d 1394, 1397–1400 (2d Cir.), *vacated*, —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir. 1991); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168–71 (1st Cir.1987); *Valley Forge Plaza Associates v. Firemen's Fund Ins. Cos.*, 107 B.R. 514, 516–18 (E.D.Pa. 1989); *St. Mary V, supra*, 117 B.R. at 131; and *In re Jackson*, 90 B.R. 126, 129–30 (Bankr.E.D.Pa.1988), *aff'd*, 118 B.R. 243 (E.D.Pa.1990).

However, the Office of Hearings and Appeals ("the OHA") of DPW also has jurisdiction of this matter, since the Trustee is contesting the adjustments made to its cost report by DPW. When a state elects to participate in the Medicaid program, it is required to designate an agency to administer the program. 42 U.S.C. § 1396a(a)(5). *See West Virginia University Hospitals, Inc. v. Casey*, 885 F.2d 11, 15 (3rd Cir. 1989). Also, pursuant to 42 C.F.R. § 447.253(c), when a state elects to participate in the Medicaid program, it

> must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative review, with respect to such issues as the agency determines appropriate, of payment rates.

Pennsylvania's compliance with the above requirement is codified at 55 PA.CODE § 1101.84(b), which governs the right to appeal interim *per diem* rates, audit allowances, or payment settlements, and vests the OHA with this power.

The OHA is designated, in applicable Pennsylvania regulations, as the agency to which an appeal of disallowances by DPW in a Termination Audit Report, such as the Amended Financial Report in issue in the instant proceeding, *must* be taken. *West Virginia, supra*, 885 F.2d at 17. We believe that allowing the OHA to proceed with the Trustee's appeal from DPW's disallowances in the Report is appropriate for several reasons. Normally, an appeal from such disallowances must be heard by the OHA. By virtue of the above-stated statutory and regulatory authorities, the OHA is vested with the expertise and competence to hear the matter before this court, develop an adequate factual record, and discern and correct any errors in disallowances of Medicaid reimbursements. We note that the Trustee has appealed the adjustments made by the DPW to the OHA, but suggests that the appeal process (1) will be delayed due to the fact that the OHA is severely understaffed, and (2) is unnecessary because the Trustee is challenging the nature of DPW's decision-making process under 42 U.S.C. § 1983. DPW, in its most recent response, suggests that the OHA is working on this appeal already and that the involvement of this court in this issue will merely duplicate the OHA's efforts.

The factors set down in *McKart*, recited at pages 427–428 *supra*, strongly suggest that some measure of deferral by this court to the processes of the OHA is appropriate. The relevant statutes and regulations provide for review by the OHA. The administrative process is at a very early stage. Neither the parties nor the OHA have had any opportunity to probe the specific analyses of DPW which led to the decision or to test the accuracy of its facts and assumptions in the decision-making process. If such an analysis were accomplished, this court would then be in a position to determine whether the disallowances were made as a result of specific factual conclusions or because of broad policy decisions which might appropriately be the subject of attack under 42 U.S.C. § 1983. *Cf. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 674–78, 106 S.Ct. 2133, 2137–40, 90 L.Ed.2d 623 (1986) (challenge of method of computation of Medicare benefits permitted); and *United States v. Erika, Inc.*, 456 U.S. 201, 208–11, 102 S.Ct.

1650, 1654–55, 72 L.Ed.2d 12 (1982) (computation of benefits not appealable). *Compare St. Joseph's, supra,* 103 B.R. at 647–48 (after extended exposure to the administrative appeal process, the debtor was able to identify three discrete generalized aspects of DPW's decision-making procedure which were properly the subject of attack in the proceeding in issue).

There is no question that the OHA has specialized knowledge of the Medicaid appeal process. This court should intervene in that process only if necessary.

The indefinite nature of DPW's decision and the Trustee's averments in this Complaint bespeak of the inadequacy of the instant factual record. The OHA is undoubtedly much more skillful than this court at adducing evidence relevant to the decision at hand and honing the issues which are at bottom in this controversy. We would be in a much better position to know whether we have an issue of constitutional interpretation, as in *McKart,* or a factual issue which should best be left to the pertinent administrative agency, as in *McGee, after* the OHA has proceeded further in the administrative process.

There is a distinct possibility that the OHA could resolve this controversy if allowed to proceed. We believe that opening the floodgates of Medicaid reimbursement disputes by the numerous debtor-providers of medical services to this court could weaken both the authority of the pertinent administrative agencies and create an unwarranted drain on this court's scarce resources.

Of course, the instant underlying main case is not a new matter and its administration in this court should be rapidly brought to conclusion. The questions raised are potentially core matters in this bankruptcy case, and we cannot neglect them indefinitely. We believe that a sure test of the ability of the OHA to respond expeditiously to the Trustee's appeal is to require the parties to resort to the OHA process for a limited period of time. In that way, we can better assess what the speed and potential for resolution and sharpening of the issues through the OHA's administration process

is likely to yield. Therefore, to a certain degree, we will apply the doctrine of primary jurisdiction and stay any proceedings in this matter for a 120–day period. *See Shelby County, supra,* 80 B.R. at 562 (court suspends its exercise of jurisdiction of Medicare dispute pending determination by federal agency). *But see, Townview Nursing Home, supra,* 28 B.R. at 441–42 (court declines to apply doctrine of primary jurisdiction to a dispute concerning reimbursement due from a City agency).

Thus, we are prepared to grant DPW's motion, but in part only. We are certainly not prepared to grant that aspect of the Motion requesting the entry of summary judgment in DPW's favor, because it is apparent that there are numerous genuine issues of material fact, the scope of which have not as yet even been defined, much less resolved. *See, e.g., St. Joseph's,* 103 B.R. at 654–55; *In re Jackson,* 92 B.R. 987, 990 (Bankr.E.D.Pa.1988); and *In re H & H Beverage Distributors, Inc.,* 65 B.R. 243, 244 (Bankr.E.D.Pa.1986). The Complaint does state what could well be bases for relief sufficient to satisfy F.R.Civ.P. 8. However, factual issues remain concerning such matters as the bases for the DPW's disallowances, the appropriateness of the rate ceilings used by the DPW, whether the DPW was "arbitrary and capricious" in its disallowances and imposition of the rate ceilings, and whether the application of the rate ceilings by DPW were consistent with the State Plan. Because of the presence of these genuine issues of material fact, we must decline to grant that aspect of the Motion requesting summary judgment in DPW's favor.

We are also unwilling to dismiss this proceeding to require the Trustee to resort exclusively to the OHA administrative process at this juncture. Rather, we will stay this proceeding for a period of 120 days from this date to allow the OHA alone to proceed to attempt to resolve this controversy. Then, after that time period, we will request that the parties make written status reports to us as preliminaries to a status conference. At the end of that conference, we will decide whether to continue

to defer to the OHA process for another discrete period of time or to proceed forward to determine the entire controversy on its merits ourselves at that point.

## E. CONCLUSION.

An Order granting DPW's Motion in part only, directing the parties to resort to the OHA appeal process for the next 120 days, and deferring decision on whether we will require the Trustee to exhaust his administrative remedies before we will proceed to determine this matter on the merits will therefore be entered. In all other respects, the Motion will be denied.