In re **KALVAR MICROFILM, INC.,** Anacomp, Inc., Anacomp International N.V., Florida AAA Corporation and Xidex Development Company.

**Bankruptcy No. 96–15(HSB).**

United States Bankruptcy Court, D. Delaware.

May 7, 1997.

**820**

Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

Barry J. Dichter, Cadwalader, Wickersham & Taft, New York City.

Ellen W. Slights, Assistant United States Attorney, Wilmington, DE.

Anne M. McCormick, Civil Division, Department of Justice, Washington, DC.

HELEN S. BALICK, Chief Judge.

This is the court's decision on the motion of the United States Customs Service to allow the Customs Service to resolve the administrative protests of the debtors (docket no. 514), and on the motion of the United States Customs Service for this court to defer adjudication of the debtor's objections to the claim of The Customs to the United States Court of International Trade (docket no. 513). The debtors oppose these motions, and have submitted about 45 pages of written argument asserting that this court must hear a dispute dealing with import duties and the Tariff Act. The United States Customs Service argues that this court does not have to, and should not hear this dispute. Each party asserts that the other is forum shopping.

## I. Facts and Prior Proceedings

The following facts appear in the record in these Chapter 11 cases or have been admitted in the pleadings, and are sufficient to rule on these two motions. These facts consist primarily of prior proceedings here and elsewhere, the regulatory scheme under which Customs operates, and the legal positions of the parties.

### A. The Pre–Petition Drawback Dispute

The United States Customs Service is a federal agency that collects duties levied upon merchandise imported into the United States to regulate foreign trade and commerce. Anacomp Incorporated and Xidex Development Company, along with other related companies, provide micrographics systems, services, and supplies, and do business in the United States and many countries abroad. "Micrographics" is the conversion of information stored in digital form or on paper to microfilm or microfiche. Anacomp and Xidex regularly import merchandise that is subject to duties.

A drawback claim by an importer requests Customs to refund duties paid upon the importation of merchandise which is later exported in some form or for which substitute merchandise is exported. *See generally* 19 U.S.C. § 1313; 19 C.F.R. §§ 141–199. Generally, Customs may refund up to 99% of

previously paid duties. 19 U.S.C. § 1313(a); § 1313(j).

When an "accelerated" drawback is requested, a Customs office may approve the drawback subject to later audit. 19 C.F.R. § 191.72; 19 C.F.R. § 191.10. Drawback claimants must post surety bonds to protect Customs from overpayment of accelerated drawbacks. 19 C.F.R. § 191.72; § 113.65. After Customs has paid a drawback claim, Customs reviews the claim and makes a determination as to whether the claim was correct. This is referred to as the liquidation process. 19 U.S.C. § 1500.

During the time period 1987 through 1995, Anacomp and Xidex (or their predecessors) filed 334 claims with the Customs Service for refunds of drawback duties they had previously paid Customs. Anacomp and Xidex sought accelerated drawbacks of these claims. According to Anacomp and Xidex, the imported parts upon which they had paid duties were used in the manufacture of merchandise which was then exported.

Anacomp and Xidex posted the necessary surety bonds. Customs refunded the drawback claims. Customs then audited the accelerated claims, and disallowed portions of the refunds. Customs billed the debtors for the previously refunded amounts that were disallowed. Anacomp and Xidex disagreed with Customs on Custom's decision relating to the overpayment of drawbacks, and initiated administrative protests with the Customs office in San Francisco. The San Francisco office forwarded the protests to the Custom's office of Regulations and Rulings in Washington, D.C.

The insurance companies that provided the surety bonds relating to these drawback claims filed protests. Customs denied the sureties' protests.

### B. *Chapter 11 Events*

Anacomp, Xidex, and related companies filed Chapter 11 petitions in this court on January 5, 1996. These cases were consolidated for procedural and administrative pur-

poses. Customs voluntarily ceased all action with respect to the administrative protests and miscellaneous unliquidated entries while the automatic stay of 11 U.S.C. § 362(a) was in effect.

On May 20, 1996, this court confirmed the debtors' third amended joint plan of reorganization.

On June 28, 1996, the United States Customs Service timely filed two proofs of claims against Anacomp. In summary, through these two claims, Customs asserts the debtors received overpayments of the above drawbacks and seeks repayment. Claim number 297 requests $2,482,081.88 as an unsecured nonpriority claim. Documents attached to this claim list 219 drawback entries of Xidex that Customs liquidated in the aggregate amount of $2,150,186.51. Customs claims this amount, plus interest of $331,895.37.

Claim number 298 requests $352,879.53 as an unsecured nonpriority claim, and $5,375.71 as an unsecured priority claim. Documents attached to this claim list 102 drawback entries of Anacomp that Customs liquidated in the aggregate amount of $208,914.93; interest due to Customs of $29,782.03; and unliquidated drawback entries for which Anacomp received an aggregate refund of $113,182.57. The claim also lists a violation of 19 C.F.R. 113.62(a)(1)(i) that provides for liquidated damages of $1,000.00. These dollar amounts total $352,879.53. Claim number 298 also lists six drawback entries totaling $5,280.68 plus $95.03 in interest due (for a total of $5,375.71) for priority duty bills.

In August 1996, Anacomp filed an objection to both claims. The objection raises various legal and factual reasons why the claims should be disallowed, and in the alternative, why the $5,375.71 amount is not entitled to priority status.

### C. *The Motions Filed by Customs and Anacomp*

On November 4, 1996, Customs filed two motions: (1) A motion to allow Customs to

resolve the administrative protests of the debtors; and (2) A motion to defer adjudication of the debtor's objections to the claim of Customs to the United States Court of International Trade. Customs filed the first motion because, while it believes those administrative protests should proceed, the debtors have asserted that the confirmed plan and order enjoin the protests from proceeding.

As a background for the second motion, Customs believes that the chief issues underlying Anacomp's protests are the same issues Customs considered and rejected in the sureties' protests. Customs states in its papers that it is ready to rule upon Anacomp's protests, and the strong implication is that Customs will deny those protests. When Customs denies an administrative protest of a drawback claimant, the claimant has the right to seek judicial review in the Court of International Trade. 28 U.S.C. § 2636. Customs concedes that this court has concurrent jurisdiction with the Court of International Trade to resolve the drawback dispute. However, in its second motion, Customs asks that this court stay its hand and defer to the specialized expertise of the Court of International Trade.

On November 15, 1996, the reorganized Anacomp filed a motion for summary judgment with respect to its objection to both claims of Customs. The motion argues that as a matter of law, Customs is time-barred from disputing the debtors' drawback entries (if the drawback entries of the debtors are allowed in full, Customs' proofs of claims would be disallowed).

## II. *Discussion*

### A. *The Motions of Customs Will be Considered First*

In a November 25, 1996 letter signed by Laura Davis Jones, Esquire, Anacomp asks this court to consider its summary judgment motion first. That request is DENIED, as to do so would moot the two motions of Customs and effectively deny on the merits the relief requested in those two motions

without giving consideration to the merits of those motions. Anacomp admits as much in its letter. In contrast, considering the two motions of Customs first, which do not ask for a ruling on the merits of the drawback dispute, does not prejudice the debtors.

### B. *This Court will Defer to the Administrative Proceedings Before Customs*

Anacomp takes the position that any attempt by Customs to resolve the administrative protests would violate the confirmed plan and order. Customs counters that its resolution of the protests does not violate the Bankruptcy Code or Anacomp's confirmed plan. Indeed, Customs asserts that this Court is without jurisdiction until the administrative proceedings before Customs are concluded.

These issues are not necessary to decide. Assuming Customs is wrong, and that Anacomp is correct, Customs' first motion essentially seeks to modify any applicable plan injunction to allow the administrative protests to proceed. Anacomp has properly admitted in several pleadings in these cases that even if its confirmed plan enjoins contemplated creditor conduct, the court can grant such relief from the injunction, for example, when the court decides to abstain from hearing a creditor's claim. *E.g.*, Docket no. 524 at 1; November 25, 1996 letter of Anacomp to the Court (asserting Customs' two motions seek discretionary abstention); Docket no. 462 at 7–9 (memorandum of law of Anacomp discussing grounds for motion of a creditor seeking relief from the confirmation order).

Furthermore, the confirmed plan itself contemplates that while this court retains jurisdiction over certain matters, including this drawback dispute, this court may "abstain[ ] from exercising, or decline[ ]to exercise, jurisdiction ... over any matter arising in, arising under, or related to the Chapter 11 cases." Docket no. 304, section 13.2 (emphasis added).

Thus, the court turns to the discretionary issue of whether this court should allow Cus-

toms to resolve the debtors' administrative protests. On this discretionary issue, the debtors are silent. Allowing the protests to proceed would "permit [an] administrative agency to develop a factual record, initially apply its expertise and discretion to the controversy, correct its own errors, eliminate judicial controversies, ... and prevent courts from frustrating congressional decisions to have certain disputes resolved originally in administrative forums." *In re St. Mary Hospital (Hiser v. Commonwealth of Pennsylvania )*, 125 B.R. 422, 428 (Bankr.Pa.1991) (citations omitted) (discussing doctrine of exhaustion of administrative remedies). Consideration of the doctrine of primary jurisdiction doctrine likewise strongly supports the same result. *E.g., id.* at 430. In short, the circumstances here overwhelmingly support allowing the administrative protests to proceed before Customs.

### C. *This Court Will Defer to the United States Court of International Trade*

■ After Customs rules upon those administrative protests, the question remains of which court should consider the debtors' continuing arguments. Customs moves for this court to defer to the United States Court of International Trade ("the CIT"). In a trilogy of cases, the United States Supreme Court established the doctrine whereby a reorganization court should stay its hand where Congress has entrusted the resolution of matters in controversy to a federal tribunal. *Smith v. Hoboken Railroad Warehouse & S.S. Connecting Co.*, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946) (Court should stay its hand pending a decision by the Interstate Commerce Commission); *Nathanson v. N.L.R.B.*, 344 U.S. 25, 30, 73 S.Ct. 80, 83–84, 97 L.Ed. 23 (1952) (same ruling vis-a-vis the National Labor Relations Board); *Order of Railway Conductors v. Pitney*, 326 U.S. 561, 565–68, 66 S.Ct. 322, 324–26, 90 L.Ed. 318 (1946) (same ruling vis-a-vis the Adjustment Board created under the Railway Labor Act). Customs relies on these cases in support of its second motion.

The debtors do not dispute that the Court of International Trade is a specialized federal tribunal created by Congress that has expertise in adjudicating the issues raised by the drawback dispute. Nonetheless, the debtors assert this court should not defer to that Court. They argue that the expertise of the CIT is not needed here. The debtors believe there is a threshold legal issue that this Court can easily resolve, and if it does so in the debtors' favor, would then disallow the proofs of claims of Customs. This issue is the statute of limitations issue raised in the debtors' summary judgment motion. That statute of limitations is contained in section 504 of the Tariff Act, and states in relevant part:

> [A]n entry of merchandise not liquidated within one year from ... the date of entry of such merchandise ... shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent.

19 U.S.C. § 1504(a). The debtors argue this language time-bars Customs from disputing their drawbacks. Customs disagrees as a matter of law. It argues that this language, which refers to "entries of merchandise," applies only to entries of merchandise, but not "drawback entries," and therefore does not apply to liquidation of the drawback claims at issue here. An entry of merchandise is defined at 19 C.F.R. § 141.0a(a). A drawback entry is defined at 19 C.F.R. § 191.2(h). Long before the present dispute arose, Customs promulgated a regulation stating that the one year liquidation time limit "shall not apply to ... drawback entries." 19 C.F.R. § 159.11(b). In their briefs, the parties have written about 40 pages on the proper scope of section 504, not including affidavits and other attachments to those briefs. In short, the record suggests that the issue is more complex than the debtors are willing to admit to this court. Moreover, the Court of International Trade is better equipped to decide just how complex the section 504 issue is, and to ultimately interpret section 504, if necessary.

The debtors have also argued prepayment of the challenged drawbacks by the debtors

would be jurisdictionally required to appeal to the CIT. Assuming that the debtors would need to prepay the disputed drawback amount,[1] the debtors' admit they have fully reserved the disputed amount on its balance sheet. Docket no. 211 at 32 (disclosure statement).[2]

The debtors also argue that Customs' decision is entitled to a presumption of correctness in the CIT,[3] and that therefore deferring to the CIT would unfairly shift the burden of proof. In the circumstances here, there is nothing unfair about requiring the debtors to follow the rules created under a Congressional scheme and normally applicable to an appeal of a Customs decision. However, the debtors' argument does partially explain their determination to keep the drawback dispute in this Court.

The debtors also argue delay. While the ongoing loss of the use of the funds is unfortunate, the debtors decided to reserve those funds, and at the same time affirmatively oppose allowing the protests to proceed during the pendency of its Chapter 11 cases. The debtors have been reorganized and the plan substantially consummated without substantive resolution of the Customs' claims. Under these circumstances, the delay does not materially change the analysis of whether to defer.

In their omnibus surreply brief, the debtors argue that the deferral motion is really an abstention motion. This is another argument that the court need not decide, as assuming Customs' motion should be deemed one for abstention, the result would not change.

In the debtors' abstention analysis, the debtors rely heavily upon In re Apex Oil Co., 131 B.R. 712 (E.D.Mo.1991). This is the only case cited by either party addressing the issue of whether a bankruptcy court should abstain to allow the CIT to resolve a dispute between a Chapter 11 debtor and Customs. That case focused on whether it was "in the interest of justice" to abstain pursuant to section 1334(c)(1) of Title 28. The debtors are correct that the factors considered by the Apex court should be considered by this court before "deferring" to the CIT. The Apex court ruled that that abstention was not in the interests of justice, for essentially two reasons "peculiar" to that case. Id. at 715. First, the drawback dispute arose post-petition and administrative proceedings would have to begin anew. Second, the CIT was not an available forum given the jurisdictional requirements of the CIT and provisions in Apex' confirmed plan inconsistent with those jurisdictional requirements.

The Apex decision merely highlights the fact-intensive nature of whether this bankruptcy court should defer to the CIT, and supports Customs' motion. This court has already ruled that the Anacomp debtors will complete the administrative protest process. Unlike Apex, because the debtors' drawback dispute commenced pre-petition, and because of the parallel protests by the sureties, the remaining proceedings before Customs should be quick. If the debtors are correct as to the simplicity and merits of the statute of limitations issue, the proceedings before the CIT should be equally expeditious. The other factors relied upon by the Apex court are also not present here.

The debtors' other arguments in opposition to Customs' second motion are equally without merit.

### III. Conclusion

In summary, this court declines to exercise jurisdiction over the drawback dispute. To the extent necessary, any injunction contained in the confirmation order or plan is MODIFIED as follows:

1. To allow the proceedings relating to the administrative protests of the debt-

---

1. This issue is not for this court to decide.

2. One of the debtor's briefs also asserts that $2.8 million of their funds have been deposited in the court registry in a United States District Court in

an escrow for Anacomp's sureties in connection with Custom's claims. Docket no. 523 at 9.

3. This issue is also not for this court to decide.

ors to the United States Customs Service's disallowance of portions of the drawback claims of Anacomp and Xidex, presently pending at the Office of Regulations and Rulings in Washington, D.C., to go forward and through completion;

2. To allow Customs to liquidate any previously unliquidated entries.

3. With respect to any decision resulting from the proceedings described in paragraphs 1 and 2 above, to allow the debtors to file and prosecute an appeal to the Court of International Trade, and to allow all other parties to that appeal to participate in that appeal.

IT IS SO ORDERED.